ASHTON POWER WRECKER EQUIPMENT COMPANY *v.* DEPARTMENT OF REVENUE.

1. COURTS—INTERSTATE COMMERCE—DECISIONS OF THE SUPREME COURT OF THE UNITED STATES.

   Due consideration must be given to decisions of the supreme court of the United States pertaining to the power of congress to regulate foreign and interstate commerce when passing upon whether or not a corporation engaged in interstate commerce is subject to State tax.

2. CONSTITUTIONAL LAW—INTERSTATE COMMERCE—STATE TAXES.

   A State tax which operates to regulate commerce between the States or with foreign nations to an extent which infringes the authority conferred upon congress can be said to exceed constitutional limitations (US Const, art 1, § 8).

3. SAME—INTERSTATE COMMERCE—STATE TAXES.

   Not all State taxation is unconstitutional because, in some manner, it has an effect upon interstate commerce.

4. TAXATION—EXEMPTION—BURDEN OF PROOF.

   A taxpayer claiming immunity from a tax has the burden of establishing his exemption.

---

REFERENCES FOR POINTS IN HEADNOTES

[2, 3, 5, 6] 51 Am Jur, Taxation § 202 *et seq.*; 47 Am Jur, Sales and Use Taxes § 10.
[2, 3, 5, 6] Validity of so-called "sales tax." 89 ALR 1432; 110 ALR 1485; 117 ALR 846; 128 ALR 893.
[4] 51 Am Jur, Taxation § 527.
[4] Construction and application of exemption or deduction provision of general sales tax act. 157 ALR 804.
[6] 47 Am Jur, Sales and Use Taxes § 44.
[6] Constitutionality, construction, and application of general use tax or other compensating tax designed to complement State sales tax. 129 ALR 222.
[7] 14 Am Jur, Costs § 91.

5. Same—Sales—Interstate Commerce—Local Activity.

A State sales tax is not an unconstitutional burden upon interstate commerce merely because the sale was negotiated through the channels of interstate commerce or because the goods involved will be transported to points outside the State almost immediately, as long as it is conditioned upon a sufficient local activity.

6. Same—Sales—Interstate Commerce—Automobile Wrecker Equipment.

Transaction whereby title and possession of automobile wrecker equipment passed to the purchasers within this State, it was installed on the purchaser's chassis in this State from material furnished here for use on property belonging to parties outside the State, constituted sufficient local activities upon which to predicate a sales tax by this State, although initiated through interstate commerce and the same property may be subjected to a use tax by another State (US Const, art 1, § 8; CL 1948, §§ 205.51–205.78).

7. Costs—Public Question—Sales Tax.

No costs are allowed in action to recover payment of State sales tax, made under protest, where there was a question of a public nature involved (US Const, art 1, § 8; CL 1948, §§ 205.-51–205.78).

Appeal from Wayne; Miller (Guy A.), J. Submitted January 10, 1952. (Docket No. 32, Calendar No. 45,188.) Decided March 6, 1952. Application for leave to appeal granted by the Supreme Court of the United States July 5, 1952.

Action by Ashton Power Wrecker Equipment Company against State of Michigan, Department of Revenue, to recover sales tax paid under protest. Judgment for plaintiff. Defendant appeals. Reversed and remanded for entry of judgment for defendant.

*McInerney & Swaby,* for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *T. Carl Holbrook* and *William D. Dexter,* Assistants Attorney General, for defendant.

BUSHNELL, J. Plaintiff Ashton Power Wrecker Equipment Company, a Michigan corporation, is engaged in the business of installing wrecker equipment and bodies on automobile trucks furnished by and belonging to purchasers of the equipment or bodies. Ashton secures a part of its business from customers outside the State of Michigan through advertisements in trade papers or by direct-mail solicitation. It also receives orders through mails and by telephone and telegraph across State lines. Truck chassis belonging to out-of-State customers are brought to plaintiff's place of business in Detroit, where wrecker equipment is installed, and the trucks are then immediately returned to the customer.

Ashton contends that such transactions are purely interstate in nature and that it is not liable for the payment of a Michigan sales tax upon this portion of its sales. Defendant department of revenue, however, under the general sales tax act (PA 1933, No. 167, as amended [CL 1948, §§ 205.51–205.78 (Stat Ann 1950 Rev §§ 7.521–7.549)]) levied a deficiency assessment on such transactions in the sum of $4,119.76 and interest thereon of $327.92. This tax was paid by Ashton under protest and suit was brought for its recovery.

The trial judge held that the decision in *Montgomery Ward & Co., Inc.*, v. *Fry*, 277 Mich 260, was controlling, and that "the whole course of procedure indicated that the matter in contemplation of the parties was one which consisted purely and simply of commercial intercourse across a State line." The trial judge further found:

"The very act of driving a truck across State lines for the purpose amounted to an act of commercial communication. When the truck reached the city of Detroit, it went into the plaintiff's plant, and there had the equipment installed upon it, with the express

understanding on both sides that the truck and the equipment were immediately to be taken out of the State of Michigan and back into the State of the owner. It is therefore perfectly plain that it was within the contemplation of the parties at all times that this entire transaction consisted of elements of transmission of information back and forth across State lines between the parties and an agreement made between them in regard to the doing of work in one State upon a piece of property the situs of which was in another State. It is impossible to conceive how such a transaction can be looked upon as anything except interstate commerce. That is what the parties intended it to be, and that is what it was."

The department of revenue has appealed from a judgment for Ashton in the sum of $4,447.68.

Both parties rely upon *J. B. Simpson, Inc.,* v. *O'Hara,* 277 Mich 55, and *Montgomery Ward & Co., Inc.,* v. *Fry, supra.*

These cases are related to the one now under consideration only in that the same general problem was presented, namely, under what circumstances are sales sufficiently in interstate commerce to be excluded from the imposition of the State sales tax. The specific questions there involved, however, are unlike that presented here.

In the *Simpson Case* orders for merchandise were given at a branch office in the city of Detroit. These orders were in writing and contained the following conditions:

"This order is subject to acceptance at our main office at Chicago, Illinois, and is not subject to countermand after such acceptance. Merchandise will be shipped from Chicago, Illinois, and *title shall pass to purchaser immediately upon delivery to the carrier.*"

The Court held:

"Such a sale is not made in Michigan but in Illinois and being interstate commerce cannot be taxed by the State of Michigan."

In the *Montgomery Ward Case* mail orders were solicited from residents of Michigan by means of printed catalogues. Shipments were made directly from Chicago to the purchasers in Michigan. The sales tax imposed upon such transactions and paid under protest were held to be recoverable because in each instance the entire transaction was wholly within interstate commerce. Another group of transactions differing from the foregoing only in the payment of the purchase price at a Montgomery Ward store in Michigan was also held to be wholly within interstate commerce. The circulation of catalogues, payment of money at retail stores, and the final shipment into Michigan were only incidental to the sales and, therefore, did not constitute sufficient local activities on which to base a Michigan sales tax.

We are not persuaded that the precise question involved in the present appeal has been heretofore determined by us; on the contrary, we feel that it is an open one.

We stated in *People* v. *Bob-Lo Excursion Co.,* 317 Mich 686, at page 691:

"Since, by the Federal Constitution the power to regulate both foreign and interstate commerce is vested in Congress (United States Constitution, art 1, § 8) due consideration must be given to pertinent decisions of the supreme court of the United States."

The basic philosophy underlying the relationship between State taxation and interstate commerce was stated by Mr. Justice Stone, writing for the court, in *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 US 33 (60 S Ct 388, 84 L ed 565, 128 ALR 876). He said, among other things:

"It is only when the tax operates to regulate commerce between the States or with foreign nations to an extent which infringes the authority conferred upon Congress, that the tax can be said to exceed constitutional limitations. * * *

"Not all State taxation is to be condemned because, in some manner, it has an effect upon commerce between the States, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress. * * *

"Courts are called upon to reconcile competing constitutional demands, that commerce between the States shall not be unduly impeded by State action, and that the power to lay taxes for the support of State government shall not be unduly curtailed."

"The general rule * * * is that a taxpayer claiming immunity from a tax has the burden of establishing his exemption." *Norton Company* v. *Department of Revenue of the State of Illinois,* 340 US 534 (71 S Ct 377, 95 L ed 517).

Ashton relies primarily upon the fact that contracts for the sale of wrecker equipment were negotiated through the channels of interstate commerce; and secondly, upon the fact that the property involved in such sales was destined to be immediately transported in interstate commerce. Transactions of a comparable nature have had the attention of the United States Supreme Court in the following cases: *Superior Oil Co.* v. *State of Mississippi, ex rel. Attorney General,* 280 US 390 (50 S Ct 169, 74 L ed 504); *Western Live Stock* v. *Bureau of Revenue,* 303 US 250 (58 S Ct 546, 82 L ed 823, 115 ALR 944); *McGoldrick* v. *Berwind-White Coal Mining Co., supra; Department of Treasury of Indiana* v. *Wood Preserving Corporation,* 313 US 62 (61 S Ct 885, 85 L ed 1188); *Department of Treasury of Indiana* v.

*Ingram-Richardson Manfg. Co. of Indiana,* 313 US 252 (61 S Ct 866, 85 L ed 1313); *International Harvester Co.* v. *Department of Treasury,* 322 US 340 (64 S Ct 1019, 88 L ed 1313); *United States* v. *South-Eastern Underwriters Association,* 322 US 533 (64 S Ct 1162, 88 L ed 1440).

Through these authorities runs the thread of reasoning that (1) the fact that a sale was negotiated through the channels of interstate commerce is immaterial; (2) that it is also immaterial that the goods will be transported to points outside the State almost immediately; and (3) that a State sales tax is lawfully imposed if it is conditioned upon a sufficient local activity.

In the matter before us both title and possession of the wrecker equipment passed to the purchasers in Michigan. The installation of the equipment was performed within Michigan; material was furnished within Michigan for use on property belonging to parties outside the State of Michigan; and these transactions, although initiated through channels of interstate commerce, were wholly completed within the State of Michigan. These are sufficient local activities upon which to predicate a Michigan sales tax. The interstate aspects of the transactions are only incidental. The fact that other States may impose a use tax upon the same property is immaterial to decision in the instant case.

For the reasons stated, we must disagree with the trial judge and hold that the sales tax was lawfully imposed in the instant case.

The judgment of the circuit court is vacated and the cause is remanded for the entry of a judgment in favor of the defendant, State of Michigan, depart-

ment of revenue. A question of general public nature being involved, no costs will be allowed.

NORTH, C. J., and DETHMERS, BUTZEL, CARR, SHARPE, BOYLES, and REID, JJ., concurred.