GARTLAND STEAMSHIP COMPANY *v.* CORPORATION &
SECURITIES COMMISSION.

1. TAXATION—CORPORATIONS—ANNUAL PRIVILEGE FEES.

An annual privilege fee levied upon a corporation is not a property tax but is a tax on the franchise to do business as a corporation within this State (CLS 1952, § 450.304).

2. COMMERCE—INTERSTATE COMMERCE—CONGRESS.

The sole right and power to regulate interstate commerce has been given to Congress (U S Const, art 1, § 8).

3. SAME—INTERSTATE COMMERCE—STATES.

States are prohibited from doing that which would substantially or unreasonably burden or obstruct the free flow of interstate commerce (U S Const, art 1, § 8).

4. SAME—STEAMSHIP COMPANY—DOING BUSINESS—INTERSTATE COMMERCE.

A State may not tax the interstate commerce of a steamship company transporting freight merely because its boats are loaded or unloaded at docks within the State on the theory that such loading or unloading constitutes doing business within the State, since freight transportation implies the taking up of property at one point and putting it down at another (U S Const, art 1, § 8).

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  51 Am Jur, Taxation §§ 799, 810.
[2]  11 Am Jur, Commerce § 9.
[3]  11 Am Jur, Commerce § 20.
[4]  51 Am Jur, Taxation §§ 205, 911.
   When interstate transportation which excludes State taxation is deemed to begin.  25 ALR 1201.
   Property destined for, or in course of removal from State as subject to taxation therein.  11 ALR2d 938.
[5]  51 Am Jur, Taxation § 862.
[6, 10]  51 Am Jur, Taxation § 863.
[7]  50 Am Jur, Statutes §§ 170, 195.
[8]  11 Am Jur, Constitutional Law § 91.
[9]  11 Am Jur, Constitutional Law § 128.
[11]  14 Am Jur, Costs § 91.

5. TAXATION—FOREIGN CORPORATION—INTERSTATE COMMERCE—IN-
TRASTATE COMMERCE.

There must be a reasonable relation between the privilege granted
by a State to a foreign corporation to do business within the
State and the privilege tax the State assesses upon the busi-
ness done within the State in that the tax may be levied only
upon intrastate business (U S Const, art 1, § 8).

6. SAME—FOREIGN CORPORATIONS—INTERSTATE COMMERCE—ANNUAL
PRIVILEGE FEE.

Tonnage of interstate or foreign freight originating or discharg-
ing in this State may not be included in computing annual
privilege tax on foreign corporation's privilege of doing busi-
ness in this State, since to do so would be contrary to the
due process clause (U S Const, art 1, § 8; Am 14; CLS 1952,
§ 450.304).

7. STATUTES—CONSTITUTIONALITY PRESUMED.

It cannot be presumed that the legislature intended to enact
an unconstitutional law.

8. CONSTITUTIONAL LAW—DECLARATION OF UNCONSTITUTIONALITY.

The power to declare laws unconstitutional should be exercised
with extreme caution, and never where serious doubt exists as
to the conflict.

9. STATUTES—PRESUMPTION OF CONSTITUTIONALITY.

Every possible presumption, not clearly inconsistent with the
language and the subject matter of a statute, is to be made
in favor of the constitutionality of the act.

10. TAXATION—FOREIGN STEAMSHIP COMPANY—INTERSTATE AND FOR-
EIGN COMMERCE—ANNUAL PRIVILEGE TAX.

The corporation and securities commission has the right and
duty to apply a method of determining a steamship company's
annual privilege tax calculated to effect a fair and proper
allocation according to the receipts, activity, business and
capital reasonably attributable to this State and in so doing
must exclude any and all cargoes transported in interstate
and foreign commerce (U S Const, art 1, § 8; CLS 1952,
§§ 450.304, 450.305e).

11. COSTS—PUBLIC QUESTION—CONSTRUCTION OF TAX ACT.

No costs are allowed in appeal from corporation tax appeal board
in proceeding involving construction of corporation tax act,
a public question being involved (U S Const, art 1, § 8; CLS
1952, §§ 450.304, 450.305e).

Appeal from Michigan Corporation Tax Appeal Board. Submitted April 14, 1954. (Docket No. 45, Calendar No. 46,095.) Decided June 7, 1954.

Petition of appeal by Gartland Steamship Company, a Delaware corporation, from a determination of its privilege fee by the Michigan Corporation & Securities Commission. From adverse ruling, plaintiff appeals. Reversed.

*Jordan Jenkins* and *Scott H. Elder* (*Johnson, Branand & Jaeger* and *Schlitz & Petersilge,* of counsel), for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Gregory H. Frederick,* Assistants Attorney General, for defendant.

KELLY, J. Gartland Steamship Company, a Delaware corporation (hereinafter referred to as Gartland), appeals from the determination of the Michigan corporation tax appeal board affirming the Michigan corporation and securities commission's assessment of a 1952 privilege tax. The question to be determined is whether said tax violated Gartland's privilege of carrying on interstate and foreign commerce. US Const, art 1, § 8.

In 1950 the corporation and securities commission issued to Gartland certificate of authority to carry on its business in Michigan in accordance with the provisions of CL 1948, § 450.93 (Stat Ann § 21.94). Gartland's only office in Michigan is that of its statutory agent; it employs no persons in Michigan, nor does it have any property located in Michigan. Gartland's sole business is transportation of commodities between ports on the Great Lakes by means of 4 vessels duly enrolled and licensed for trade and

commerce on the Great Lakes under the laws of the United States.

Gartland engages in transportation between the ports of the several States bordering on the Great Lakes and between the ports of those States and ports in Canada likewise bordering on the Great Lakes. The vessels are at all times navigated in waters which are navigable waters of and are under the exclusive jurisdiction and control of the United States or Canada.

During 1951 Gartland transported a total of 1,877,-875 tons of commodities, of which 35,840 tons were transported between ports in Michigan, 612,683 tons were transported between ports in Michigan and ports of other States of the United States or the Province of Ontario, Canada, and 1,229,352 tons were transported between ports wholly outside Michigan. The total tonnage of revenue cargo loaded and unloaded in Michigan ports and transported between such ports was 71,680 and the total tonnage of such cargo loaded and unloaded in all Great Lakes ports was 3,755,750. The commodities which Gartland transports to or from Michigan ports, such as iron ore, limestone, sand and coal, are neither loaded into its vessels nor unloaded from them by means of any shore facilities in which Gartland has any proprietary interest or which Gartland operates, directs or controls.

Gartland's income from the transaction of its transportation business consists solely of freight for the service of transporting commodities. That service is performed by navigating or moving vessels to docks of various ports on the Great Lakes, including the ports of Michigan, where the cargoes are loaded or unloaded, as the case may be, and navigating the vessels between loading and unloading ports. The freight charges on cargoes transported by Gart-

land, whether they involve Michigan ports or not, are paid to Gartland outside Michigan.

Gartland timely filed its franchise fee return for 1952, computing the fee as follows:

$$\frac{71,680 \text{ T}}{3,755,750 \text{ T}} \times \$1,561,981 \times .004 = \$119.24.$$

In making this computation Gartland included in the numerator the tonnages of only those cargoes which were both loaded and unloaded in Michigan and transported between Michigan ports.

The corporation and securities commission changed the computation by adding into the numerator the tonnages of all cargoes which were either loaded or unloaded in Michigan ports and which were transported in interstate or foreign commerce to or from Michigan ports. The computation of the commission is as follows:

$$\frac{71,680 \text{ T} + 612,683 \text{ T}}{3,755,750 \text{ T}} \times \$1,561,981 \times .004 = \$1,138.15$$

to which was added a filing fee of $2, making the total $1,140.15.

PA 1921, No 85, as amended by PA 1952, No 183 (CL 1948 and CLS 1952, § 450.301 *et seq.* [Stat Ann and Stat Ann 1953 Cum Supp § 21.201 *et seq.*]), provides in part:

"Sec. 4. Every * * * profit corporation organized or doing business under the laws of this state, or having the privilege to do business, employing capital or persons, owning or managing property or maintaining an office, or engaging in any transaction, in this State, * * * shall pay, at the time of filing the annual report with the Michigan corporation and securities commission, as required by sections 81 and 82 of Act No 327 of the Public Acts of 1931, being sections 450.81 and 450.82 of the Compiled Laws of 1948, an annual fee of 4 mills

upon each dollar of its paid-up capital and surplus, but such franchise fee shall in no case be less than $10.  *   *   *

"Sec. 5c. (1) In the case of  *   *   * carriers by water, the annual franchise fee shall be measured by that portion of the corporation's paid-up capital and surplus as the sum of the tonnage of revenue passengers and revenue cargo first received or finally discharged by the carrier within this State is to the total of such tonnage so received and so discharged by such carrier within and without this State.  *   *   *

"Sec. 5e. If it shall appear on the application of the taxpayer or otherwise that an allocation factor determined pursuant to this act does not properly reflect the activity, business, receipts and capital of a taxpayer reasonably attributable to the State, the commission shall adjust it by:

"(1) Excluding 1 or more of the factors or any component thereof;

"(2) Including 1 or more other factors, such as expenses, purchases, contract values (minus subcontract values);

"(3) Excluding proportionately 1 or more asset items in computing entire paid-up capital and surplus; or

"(4) Applying any other similar method calculated to effect a fair and proper allocation according to the receipts, activity, business and capital reasonably attributable to this State."

In *Chicago, Duluth & Georgian Bay Transit Co.* v. *Corporation & Securities Commission,* 319 Mich 14, we said (p 21):

"At the outset it may be noted that the following is settled law in this jurisdiction.  An annual privilege fee levied upon a corporation is not a property tax.  Instead, it is a tax on the franchise to do business as a corporation within this State. *Union Steam Pump Sales Co.* v. *Secretary of State,* 216 Mich 261."

The tax imposed was under CL 1929, § 10140, as amended by PA 1933 (Ex Sess), No 13, which is CL 1948, § 450.304. This is section 4 of the act above quoted and as now amended by PA 1952, No 183 (CLS 1952, § 450.304).

The Constitution gives to Congress the sole right and power to regulate interstate commerce and the States are prohibited from doing that which would substantially or unreasonably burden or obstruct the free flow of such commerce. *Michigan-Wisconsin Pipe Line Co.* v. *Calvert,* 347 US 157 (74 S Ct 396, 98 L ed 342); *Puget Sound Stevedoring Co.* v. *State Tax Commission,* 302 US 90 (58 S Ct 72, 82 L ed 68); *Joseph* v. *Carter & Weekes Stevedoring Co.,* 330 US 422 (67 S Ct 815, 91 L ed 993).

A tax cannot be imposed on interstate commerce because Gartland's boats are loaded or unloaded at docks within the State. Such a tax cannot be sustained on the theory that said loading or unloading constitutes doing business within the State.

The State of Pennsylvania assessed a tax on the capital stock of a New Jersey corporation which operated a ferry between New Jersey and Pennsylvania. The State endeavored to sustain the tax by showing that the corporation landed and received passengers and freight at a leased dock in Pennsylvania. In the case of *Gloucester Ferry Co.* v. *Pennsylvania,* 114 US 196 (5 S Ct 826, 29 L ed 158), the United States supreme court held the tax invalid and said (p 203):

"As to the first reason thus expressed, it may be answered that the business of landing and receiving passengers and freight at the wharf in Philadelphia is a necessary incident to, indeed is a part of, their transportation across the Delaware river from New Jersey. Without it that transportation would be impossible. Transportation implies the taking up of persons or property at some point and putting them

down at another. A tax, therefore, upon such receiving and landing of passengers and freight is a tax upon their transportation; that is, upon the commerce between the 2 States involved in such transportation."

The fact that the corporation could not lease its wharf in Philadelphia except by the implied consent of the legislature, was held by the court to be of no significance for (p 205):

"If by reason of landing or receiving passengers and freight at wharves, or other places in a State, they can be taxed by the State on their capital stock on the ground that they are thereby doing business within her limits, the taxes which may be imposed may embarrass, impede, and even destroy such commerce with the citizens of the State."

In the case of *Puget Sound Stevedoring Co. v. State Tax Commission, supra,* the United States supreme court decided that the supreme court of Washington was in error in finding that a stevedoring corporation which loaded and unloaded ships was an independent contractor engaged in local business. The court held (p 92):

"The business of appellant, in so far as it consists of the loading and discharge of cargoes by longshoremen subject to its own direction and control, is interstate or foreign commerce.

"Transportation of a cargo by water is impossible or futile unless the thing to be transported is put aboard the ship and taken off at destination. A stevedore who in person or by servants does work so indispensable is as much an agency of commerce as shipowner or master. * * * The longshoreman busied in the same task bears the same relation as the crew to the commerce that he serves. Indeed, for the purposes of the merchant marine act (41 Stat 988, 1007 [46 USCA, § 688]), a stevedore is a 'seaman.'"

The United States supreme court held that Texas did not have the right to impose an occupation tax on the gathering or taking of gas from gas plants into pipelines for transportation in interstate commerce. In *Michigan-Wisconsin Pipe Line Co.* v. *Calvert, supra,* the Court said (pp 166, 167):

"This event, as stipulated, occurs after the gas has been produced, gathered and processed by others than appellants. The 'taking' into appellants' pipelines is solely for interstate transmission and the gas at that time is not only actually committed to but is moving in interstate commerce.    *   *   *

"It is now well settled that a tax imposed on a local activity related to interstate commerce is valid if, and only if, the local activity is not such an integral part of the interstate process, the flow of commerce, that it cannot realistically be separated from it. (Citing cases.)    *   *   *

"This economic process (the gathering of gas) is inherently unsusceptible of division into a distinct local activity capable of forming the basis for the tax here imposed, on the one hand, and a separate movement in commerce, on the other. It is difficult to conceive of a factual situation where the incidence of taking or loading for transmission is more closely related to the transmission itself."

Appellee calls attention to the following cases which hold that an enterprise exclusively interstate in character may be required "to pay its way" and contribute to the support of local government: *Illinois Central Railroad Co.* v. *Minnesota,* 309 US 157 (60 S Ct 419, 84 L ed 670); *Cudahy Packing Co.* v. *State of Minnesota,* 246 US 450 (38 S Ct 373, 62 L ed 827); *Maine* v. *Grand Trunk R. Co.,* 142 US 217 (12 S Ct 121, 163, 35 L ed 994); *Ott* v. *Mississippi Valley Barge Line,* 336 US 169 (69 S Ct 432, 93 L ed 585); and *McGoldrick* v. *Berwind-White Coal Min-*

*ing Co.,* 309 US 33 (60 S Ct 388, 84 L ed 565, 128 ALR 876.)

These cases provide that the tax in form and substance must not be a privilege tax, but must be one based on property, or for the use of facilities within the State, and, therefore, do not apply in this case. The tax imposed on Gartland is a privilege tax and Gartland owns no property in this State.

The United States supreme court has held that there must be a reasonable relation between the privilege granted by a State and the privilege tax the State assesses. *McCarroll v. Dixie Greyhound Lines, Inc.,* 309 US 176 (60 S Ct 504, 84 L ed 683) ; *Ingels v. Morf,* 300 US 290 (57 S Ct 439, 81 L ed 653) ; *Cooney v. Mountain States T. & T. Co.,* 294 US 384 (55 S Ct 477, 79 L ed 934) ; *Interstate Transit, Inc., v. Lindsey,* 283 US 183 (51 S Ct 380, 75 L ed 953) ; *New Jersey Bell Telephone Co. v. State Tax Board,* 280 US 338 (50 S Ct 111, 74 L ed 463) ; *Sprout v. South Bend,* 277 US 163 (48 S Ct 502, 72 L ed 833, 62 ALR 45).

In *Hans Rees' Sons, Inc., v. North Carolina,* 283 US 123 (51 S Ct 385, 75 L ed 879) the court held that North Carolina had violated the due process clause of the 14th amendment of the Constitution by assessing a net income tax on 80% of the income when only 17% was attributable to North Carolina. The court said (pp 135, 136) :

"The statutory method, as applied to the appellant's business for the years in question operated unreasonably and arbitrarily, in attributing to North Carolina a percentage of income out of all appropriate proportion to the business transacted by the appellant in that State. In this view, the taxes as laid were beyond the State's authority."

Gartland's assessment by the commission is based on the total number of tons loaded or unloaded in

Michigan. Only about 1.9% of Gartland's tonnage was between Michigan ports. The commission's assessment is based on 18.2% of Gartland's tonnage and therefore 18.2% of Gartland's paid-up capital and surplus. Such an assessment in our opinion constitutes an unlawful burden on interstate and foreign commerce.

The tonnage Gartland transports intrastate can be definitely separated from the tonnage transported in interstate or foreign commerce, and when that can be done the State should do so in determining the privilege fee.

In *Cooney* v. *Mountain States T. & T. Co., supra,* the court said (pp 392, 393):

"There is no question that the State may require payment of an occupation tax from one engaged in both intrastate and interstate commerce. But a State cannot tax interstate commerce; it cannot lay a tax upon the business which constitutes such commerce or the privilege of engaging in it. And the fact that a portion of a business is intrastate and therefore taxable does not justify a tax either upon the interstate business or upon the whole business without discrimination. * * * Where the tax is exacted from one doing both an interstate and intrastate business, it must appear that it is imposed solely on account of the latter; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the tax; and that the one who is taxed could discontinue the intrastate business without also withdrawing from the interstate business."

In *Ratterman* v. *Western Union Telegraph Co.,* 127 US 411 (8 S Ct 1127, 32 L ed 229), the court said (pp 424, 425):

"Where the subjects of taxation can be separated so that that which arises from interstate commerce

can be distinguished from that which arises from commerce wholly within the State, the court will act upon this distinction, and will restrain the tax on interstate commerce while permitting the State to collect that arising upon commerce solely within its own territory."

In *Connecticut General Life Insurance Co.* v. *Johnson,* 303 US 77 (58 S Ct 436, 82 L ed 673), California imposed a tax for the privilege of doing business and included out-of-State reinsurance premiums received by the taxpayer. The taxpayer was doing both interstate and intrastate business, and it was held that the receipts from the out-of-State business could not be included in the tax computation without a violation of the due process clause. The court said (p 81):

"Apart from the facts that appellant was privileged to do business in California, and that the risks reinsured were originally insured against in that State by companies also authorized to do business there, California had no relationship to appellate or to the reinsurance contracts. No act in the course of their formation, performance or discharge, took place there. The performance of those acts was not dependent upon any privilege or authority granted by it, and California laws afforded to them no protection."

The commission's construction of PA 1921, No 85, as amended by PA 1952, No 183 (CL 1948, and CLS 1952, § 450.301 *et seq.* [Stat Ann and Stat Ann 1953 Cum Supp § 21.201 *et seq.*]), that it had the right to include tonnage transported in interstate and foreign commerce is contrary to the due process clause of the 14th amendment.

In *Smilansky* v. *Mandel Bros.,* 254 Mich 575, this Court was called upon to pass judgment on an attempt by a foreign corporation to enforce a contract for supplying and installing furniture, furnishings

and decorations. We held that insofar as the transaction concerned intrastate commerce no action could be maintained; however, suit was permitted on the interstate portion of the contract, and in allowing suit we said (pp 582, 583):

"The portions of the instant contract and transaction which our statute condemns may be definitely identified and segregated so that only interstate commerce items remain. As the statute does not interfere with interstate commerce, such segregation is logical. From recovery thereon, no injury can result to plaintiff and defendant, as they are called upon to meet only their legal obligations; the policy of the State is maintained, because no recovery is allowed for prohibited acts; the statute is kept in its intended and constitutional bounds, and the result is appropriate to a court of equity. We think the inhibitions of the statute to sue should be confined to those portions of the transaction of which intrastate acts are an integral part."

In determining the question before us and in interpreting the legislature's intent in the passage of PA 1952, No 183, we cannot presume that the legislature intended to enact an unconstitutional law. This principle has been adopted in *Alaska Packers Assn.* v. *Commission,* 294 US 532 (55 S Ct 518, 79 L ed 1044), and in *Whitney* v. *California,* 274 US 357 (47 S Ct 641, 71 L ed 1095). And, in *Rouse, Hazard & Co.* v. *Wayne Circuit Judge,* 104 Mich 234 (27 LRA 577, 53 Am St Rep 457), this Court adopted that principle when we said (p 239):

" 'The power of declaring laws unconstitutional should be exercised with extreme caution, and never where serious doubt exists as to the conflict. In cases of doubt, every possible presumption, not clearly inconsistent with the language and the subject matter, is to be made in favor of the constitutionality of the act.' "

It is the opinion of this Court that by the enactment of PA 1952, No 183, § 5e (CLS 1952, § 450.305e [Stat Ann 1953 Cum Supp § 21.208(5)]), the legislature gave to the commission the right and duty to apply a method of determining Gartland's tax "calculated to effect a fair and proper allocation according to the receipts, activity, business and capital reasonably attributable to this State."

The order and opinion of the corporation tax appeal board affirming the computation of the commission is reversed, and the commission is directed to recompute the annual privilege fee of Gartland Steamship Company, a Delaware corporation, excluding any and all cargoes transported in interstate and foreign commerce.

No costs, a public question being involved.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.