DETROIT & CLEVELAND NAVIGATION COMPANY *v.* DEPARTMENT OF REVENUE.

1. Taxation—Sales Tax—Gross Proceeds.

The Michigan sales tax is a tax imposed upon the seller for the privilege of making retail sales within the State and is measured by the gross proceeds of such sales (CL 1948, § 205.-51 *et seq.*).

2. Same—State Sales Tax—Interstate Commerce.

A State sales tax is not aimed at nor does it discriminate against interstate commerce as it is laid upon every purchase of goods for consumption, regardless of whether they have been transported in interstate commerce (US Const, art 1, § 8[3]; CL 1948, § 205.51 *et seq.*).

3. Same—Transfer of Possession of Tangible Property.

The transfer of possession of tangible property to the purchaser thereof within the State is a taxable event regardless of the time and place of passing title or the fact that the goods have been transported in interstate commerce and brought to the journey's end (US Const, art 1, § 8[3]; CL 1948, § 205.51 *et seq.*).

4. Same—Local Business or Occupation—Interstate Commerce.

The taxation of a local business or occupation is not forbidden merely because in its ordinary course interstate commerce is induced or occasioned by such business or is a prerequisite to it.

References for Points in Headnotes

[1, 7–9]  47 Am Jur, Sales and Use Taxes §§ 2, 15, 22.
[2, 4–6]  47 Am Jur, Sales and Use Taxes §§ 4, 10.
[2, 4–6]  Validity of so-called "sales tax."  89 ALR 1432; 110 ALR 1485; 117 ALR 846; 128 ALR 893.
[3]  47 Am Jur, Sales and Use Taxes § 22 *et seq.*
[10]  14 Am Jur, Costs §§ 37, 91.

5. Same—Gross Receipts Tax—Interstate Commerce—Multiple Burden—Discrimination.

A State tax based upon gross receipts is not valid, however apportioned, if the transaction taxed is essentially a part of, and inseparable from, interstate commerce, but if the activity is sufficiently local in character, it may be subject to a tax if that tax is properly apportioned and allocated to prevent the imposition of a multiple burden and is nondiscriminatory (US Const, art 1, § 8[3]; CL 1948, § 205.51 *et seq.*).

6. Same—Sales—Interstate Commerce.

A sale which is consummated locally, though incidentally involved in interstate commerce, may be a taxable local activity (US Const, art 1, § 8[3]; CL 1948, § 205.51 *et seq.*).

7. Same—Sales Aboard Ship Engaged in Interstate and Foreign Commerce.

Sales of food, liquor and other tangible property, made upon a boat which moved in interstate or foreign commerce, were properly subjected to State general sales tax under formula whereby tax was levied on such proportion of sales as route in State waters bore to entire route, since it is the sales transaction and the privilege of making it that is taxed and not the transportation, the imposition of the tax by this State preventing the imposition of a similar tax on the same transaction by another jurisdiction (US Const, art 1, § 8[3]; CL 1948, § 205.51 *et seq.*).

8. Same—Sales—Interstate Commerce.

A general sales tax upon a particular transaction is not invalid because the only method of determining the amount of liability is by a reasonable formula, where the economic relation of the activity to interstate commerce determines the validity of the tax (US Const, art 1, § 8[3]; CL 1948, § 205.-51 *et seq.*).

9. Same—Sales—Constitutional Law.

A State may adopt a reasonable method for determining the the actual liability and the amount of the sales, where it is within its constitutional rights in taxing sales (US Const, art 1, § 8[3]; CL 1948, § 205.51 *et seq.*).

10. Costs—Public Question—Sales Tax—Interstate Commerce.

No costs are allowed in action by taxpayer to recover sums paid under State general sales tax act upon sales made aboard ship engaged in interstate or foreign commerce, a public question being involved (US Const, art 1, § 8[3]; CL 1948, § 205.51 *et seq.*).

Appeal from Court of Claims; Leibrand (Karl K.), J., presiding. Submitted January 11, 1955. (Docket No. 46, Calendar No. 46,358.) Decided April 14, 1955.

Claim by Detroit & Cleveland Navigation Company, a Michigan corporation, against the Michigan Department of Revenue for sums paid on sales tax on determination claimed excessive. Judgment for defendant. Plaintiff appeals. Affirmed.

*Dyer, Angell & Meek* (*Willis C. Bullard* and *Lewis M. Slater,* of counsel), for plaintiff.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *T. Carl Holbrook, Maurice Barbour* and *William D. Dexter,* Assistants Attorney General, for defendant.

BUTZEL, J. The Detroit & Cleveland Navigation Company, a Michigan corporation, brought suit against the Michigan department of revenue in the court of claims to recover the sum of $4,018.50 constituting sales tax paid after an adverse decision by the State board of tax appeals. There is very little dispute as to the material facts in the case. Plaintiff operated a line of large passenger ships over the following routes:

(a) Buffalo division—One steamer left Detroit, Michigan, for Buffalo, New York, and another left Buffalo for Detroit every afternoon during the navigation season; each arrived at its destination the following morning;

(b) Cleveland division—One steamer left Detroit for Cleveland, Ohio, and another left Cleveland for Detroit late every night and each arrived at their respective destinations early the following morning;

(c) Put-in-Bay, Ohio, and Lake division—Each

day the vessel on the Cleveland division which arrived in Detroit made a round trip to Put-in-Bay and remained there a few hours. ·The record is not clear as to whether the boat also made lake excursions during the day, but this is not material to the issue;

(d) Midweek cruise—Another steamer left Detroit each Monday afternoon for Mackinac Island, then to Sault Ste. Marie, Michigan, then to Midland, Ontario, and arrived in Detroit the following Friday morning;

(e) Weekend cruise—A vessel left Detroit Friday evening, went to Sault Ste. Marie, Michigan, then to Mackinac Island, Michigan, and returned to Detroit Monday morning.

Plaintiff obtained a liquor license for water craft from the Michigan liquor control commission. On the trips it sold food, liquor, postal cards and novelties. The record shows that while not impossible, it was not practical or feasible to determine with exactitude whether, on these fast steamers, the sales were made in Michigan, Canadian or other waters. The vessels, particularly when sailing in narrow navigable channels, frequently had to cross the line between American and Canadian waters, depending entirely upon weather conditions and also so as not to encounter other boats. As a matter of fact the Buffalo boats crossed the international boundary line twice immediately after leaving the Detroit dock so as to proceed down the Detroit river.

On the Buffalo round trips the vessels were in Michigan waters 5.833% of the time; on the Cleveland round trips 14.232%; on the Put-in-Bay and Lake division 53%; on the midweek cruise 61.284%; and on the week-end cruise 88.096%. The gross amount received from sales of food, liquor, postal cards and novelties on each division was set down, to which was applied the percentage of time the boats in that division were in Michigan waters. The

amount thus determined was considered the total sum derived from sales in Michigan. The amount of such sales in 1949 was $110,625.02 to which the 3% sales tax was applied in the sum of $3,318.75 which, plus penalty, is the amount plaintiff claims. The sales tax for several previous years had been figured in a similar manner but no suit was brought to recover such payments. There appears to be no question raised in regard to the time the vessels were in and out of Michigan waters on the various trips, nor as to the reasonableness of the formula or percentages heretofore stated. Plaintiff asserts, however, that all sales on all trips were made in interstate or foreign commerce and that the tax thereon, regardless of apportionment, is prohibited by article 1, § 8(3) of the Federal Constitution, the commerce clause.

The Michigan sales tax is a tax imposed upon the seller for the privilege of making retail sales within the State of Michigan and is measured by the gross proceeds of such sales. CL 1948, § 205.51 *et seq.*, and as amended by PA 1949, No 272 (Stat Ann § 7.521 *et seq.*); *Montgomery Ward & Co., Inc.*, v. *Fry*, 277 Mich 260; *Federal Reserve Bank of Chicago* v. *Department of Revenue*, 339 Mich 587.

Our attention has been directed to many decisions by the United States supreme court. It would be extremely difficult, if not impossible, to analyze and harmonize all of its pronouncements in this complex field. We have not had cited, nor can we find, any case which can be considered as factually controlling. We shall therefore consider only a few milestone cases, not for their factual similarity, but for the purpose of establishing what tests to apply to the unique situation before us. Following its pronouncement in *Western Live Stock* v. *Bureau of Revenue* (1938), 303 US 250 (58 S Ct 546, 82 L ed 823, 115 ALR 944), the court decided in *McGoldrick* v.

*Berwina-White Coal Mining Co.* (1940), 309 US 33 (60 S Ct 388, 84 L ed 565, 128 ALR 876), that a New York City sales tax was valid as applied to the sales of coal mined in another State and delivered and sold in New York City where the company maintained a sales office and consummated its sales contracts. In the course of its opinion the court stated (pp 47–49, 58):

"Equality is its theme. * * * It does not aim at or discriminate against interstate commerce. It is laid upon every purchaser, within the State, of goods for consumption, regardless of whether they have been transported in interstate commerce. Its only relation to the commerce arises from the fact that immediately preceding transfer of possession to the purchaser within the State, which is the taxable event regardless of the time and place of passing title, the merchandise has been transported in interstate commerce and brought to its journey's end. * * *

"Nor is taxation of a local business or occupation which is separate and distinct from the transportation or intercourse which is interstate commerce, forbidden merely because in the ordinary course such transportation or intercourse is induced or occasioned by such business, or is prerequisite to it. * * *

"Here the tax is conditioned upon a local authority, delivery of goods within the State upon their purchase for consumption. It is an activity which, apart from its effect on the commerce, is subject to the State taxing power. The effect of the tax, even though measured by the sales price, as has been shown, neither discriminates against nor obstructs interstate commerce more than numerous other State taxes which have repeatedly been sustained as involving no prohibited regulation of interstate commerce."

See comment, 38 Mich L Rev 1292 (1940).

In 1947 the court handed down *Joseph* v. *Carter & Weekes Stevedoring Co.*, 330 US 422 (67 S Ct 815, 91 L ed 993), which plaintiff considers controlling here. It was there decided that an excise tax on the gross receipts of a stevedoring company was invalid for the reason that the activity taxed was essentially a part of and inseparable from interstate commerce, regardless of the fact that such tax might be apportioned. The decision was primarily based upon the close relation of stevedoring as necessary to vessels engaged in commerce and cannot be considered as eliminating all but the "direct burden" test as measures of validity—plaintiff's contention. In fact, the court noted (p 429):

"A power in a State to tax interstate commerce or its gross proceeds, unhampered by the commerce clause, would permit a multiple burden upon that commerce. This has been noted as ground for their invalidation. *Western Live Stock* v. *Bureau of Revenue*, 303 US 250, 255 (58 S Ct 546, 82 L ed 823, 115 ALR 944). The selection of an intrastate incident as the taxable event actually carries a similar threat to the commerce but, where the taxable event is considered sufficiently disjoined from the commerce, it is thought to be a permissible State levy. This result generally is reached because the local incident selected is one that is essentially local and is not repeated in each taxing unit."

It has been said that the supreme court's position has undergone modification. See *Freeman* v. *Hewit* (1946), 329 US 249 (67 S Ct 274, 91 L ed 265); Powell, More Ado About Gross Receipts Taxes, 60 Harv L Rev 501, 710 (1947); Barrett, "Substance" v. "Form" in the Application of the Commerce Clause to State Taxation, 101 U of Pa L Rev 740 (1953). However, in recent decisions the court has espoused the "multiple burden" and "discrimination" as well as the "direct burden" criteria. See *Interstate Oil*

*Pipe Line Co.* v. *Stone* (1949), 337 US 662, 668 (69 S Ct 1264, 93 L ed 1613); *Michigan-Wisconsin Pipe Line Co.* v. *Calvert* (1954), 347 US 157 (74 S Ct 396, 98 L ed 583). A consideration of the foregoing and other authorities leads us to conclude that a tax based upon gross receipts is not valid, however apportioned, if the transaction taxed is essentially a part of, and inseparable from, interstate commerce. Where, however, the activity is deemed sufficiently "local" in character, it may be subject to a tax if that tax is properly apportioned and allocated to prevent the imposition of a multiple burden, and is nondiscriminatory. The primary inquiry concerns the relationship of the transaction taxed to interstate commerce, or in this case, whether the sale of tangibles on a steamship traveling in interstate or foreign commerce is a sufficiently "local" activity, apart from the transportation of passengers, to be subject to taxation.

It is conceded that sales are made in Michigan waters. Some are made while a boat is docked, but most are made during the course of the journey. It is possible that in some instances the food is ordered in Michigan, consumed in Canada, and paid for in Ohio. However, the sales tax applied only to those sales "within the State." The formula utilized purports to reach only such sales. Plaintiff argues that all of the sales themselves are interstate commerce which Michigan seeks to tax. However, this case does not involve the type of transaction where buyer and seller are in different jurisdictions and/or where part of the sales transaction itself crosses State boundaries. See *McLeod* v. *J. E. Dilworth Co.* (1944), 322 US 327 (64 S Ct 1023, 88 L ed 1304); *Montgomery Ward & Co., Inc.,* v. *Fry, supra.*

We realize that any event which may take place within the taxing jurisdiction may be considered "local" in the ordinary sense of the term, but all

activities which are "local" in the ordinary sense are not sufficiently "local" in the legal sense to justify a a tax thereon (assuming due process requirements are met). See *Memphis Steam Laundry Cleaner, Inc.*, v. *Stone* (1952), 342 US 389 (72 S Ct 424, 96 L ed 436); *Railway Express Agency, Inc.*, v. *Virginia* (1954), 347 US 359 (74 S Ct 558, 98 L ed 757). However, a sale, where consummated locally, though incidentally involved with interstate commerce has been held a taxable local activity. *McGoldrick* v. *Berwind-White Coal Mining Co., supra; International Harvester Co.* v. *Department of Treasury* (1944), 322 US 340 (64 S Ct 1019, 88 L ed 1313); *Ashton Power Wrecker Equipment Co.* v. *Department of Revenue,* 332 Mich 432, appeal dismissed, 344 US 870 (73 S Ct 167, 97 L ed 674). We see no reason to alter such a view because the sales are made upon a boat which is moving in interstate or foreign commerce. The sales reached are those made in Michigan waters in the presence of both buyer and seller. It is the sales transaction and the privilege of making it that were taxed, not the transportation.

Plaintiff argues that because of the duration of the trips meals are necessary and required. This is undoubtedly true. However, to consider such an argument as determining the validity of the tax would force us to decide whether liquor or postcards or novelties, et cetera, are each as essential to the journey as food might be. Such an inquiry would be absurd. The essence of Michigan's power to tax all of such sales made within the State lies in the distinction between the sale of tangibles and the transportation of passengers. By virtue of the fact that Michigan is only taxing sales made within its borders, the tax in and of itself prevents the imposition of a similar tax on this same transaction by another jurisdiction. There is no danger of a multiple

burden here.   Neither is there discrimination for
all local retailers bear the same tax.

Plaintiff contends that the State is without power
to apportion a tax which is a direct burden on com-
merce.   This argument is premised upon a determi-
nation that the sales are an integral part of com-
merce.   We have decided they are not.   The su-
preme court has approved taxes on transportation
where there was a proper apportionment formula
which took into account both inter- and intra-state
activity.   See *Central Greyhound Lines, Inc.*, v.
*Mealey* (1948), 334 US 653 (68 S Ct 1260, 92 L ed
1633); *Canton Railroad Co.* v. *Rogan* (1951), 340 US
511 (71 S Ct 447, 95 L ed 488, 20 ALR2d 145).   It
has been done the same in cases involving taxes on
local activities.   See *International Harvester Co.* v.
*Evatt* (1947), 329 US 416 (67 S Ct 444, 91 L ed 390).
In *Gartland Steamship Co.* v. *Corporation & Securi-
ties Commission* (1954), 339 Mich 661, this Court
was concerned with the imposition of a corporation
franchise tax on a steamship company.   While we
reversed and ordered a recomputation, we upheld
the liability of the company for the tax, if based on
a formula reasonably apportioning business done
within the State.

The nature of the schedules and the routing of
plaintiff's ships makes it difficult to isolate each par-
ticular sale to determine whether or not it was made
in Michigan.   We cannot agree with plaintiff's con-
tention that "the inability to make such segregation
prohibits the State from taxing any of the sales."
Once it has been decided that a particular trans-
action is subject to a tax, we are not obliged to in-
validate the tax because the only method of deter-
mining the amount of liability is by a reasonable
formula.   It is the economic relation of the activity
to commerce that determines the validity of the tax.
If the State is within its constitutional rights in tax-

ing the sales we think it may adopt a reasonable method for determining the actual liability and the amount of the sales. The statute, CLS 1952, § 205.67 (Stat Ann 1950 Rev § 7.538), does not forbid it.

It is therefore our conclusion that the sales made in Michigan on plaintiff's ships are subject to the Michigan sales tax and we hereby affirm the judgment of the court of claims. No costs. A public question is involved.

CARR, C. J., and SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.