TERCO, INC v DEPARTMENT OF TREASURY

Docket No. 66946. Submitted April 21, 1983, at Lansing.—Decided July 11, 1983.

At all times relevant plaintiff Terco, Inc., was a Michigan corporation engaged in the computer leasing business. Plaintiff was not a sales tax registrant but was a use tax registrant. During early 1979, plaintiff sold a computer to Compu-Link Corporation, a Michigan corporation, in a casual and isolated transaction outside its usual business activities. Plaintiff paid $12,998 in tax on the gross sale of $325,000. In late 1979, plaintiff began its attempt to obtain a refund, realizing that a sales tax was not due and payable on the casual and isolated transaction. Defendant Department of Treasury repeatedly refused to issue a refund. Plaintiff filed a complaint for mandamus with the Court of Appeals. In an order entered February 23, 1981, the Court of Appeals denied the petition for lack of merit on the grounds presented because it appeared that plaintiff had a plain, speedy, and adequate alternative remedy before the Tax Tribunal. On April 4, 1981, plaintiff petitioned the Tax Tribunal for review, contending that defendant wrongfully withheld its sales tax overpayment. The Tax Tribunal determined that plaintiff's sale of the computer was not subject to sales tax as the sale was an isolated transaction and was not subject to use tax, as the use tax "was not intended to apply to in-state sales made outside the ordinary course of a transferor's business". The tribunal ordered a hearing to determine whether the refund should be issued to plaintiff or Compu-Link Corporation. Defendants moved for reconsideration on August 26, 1982. On September 10, 1982, plaintiff filed a stipulation signed by plaintiff's vice president and the president of Compu-Link Corporation indicating that the refund referred to in the tribunal's opinion should be issued to Compu-Link Corporation. The

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law §§ 612, 628.
[2, 4] 68 Am Jur 2d, Sales and Use Taxes § 201.
  Use tax on property purchased by nonresident in another state. 41 ALR2d 535.
[3] 68 Am Jur 2d, Sales and Use Taxes §§ 1, 171, 174.

tribunal vacated the conclusions of law contained in its prior opinion and determined that the transaction was subject to the use tax because the computer was purchased for use in Michigan and the transaction was not specifically exempted from use taxation. Plaintiff appealed. *Held:*

The purpose of the use tax is to impose a tax on the privilege of using, storing, or consuming tangible personal property in this state and is imposed upon the consumer or purchaser. The Use Tax Act does not limit the imposition of tax to those properties purchased out-of-state and brought into Michigan. The use tax applied to plaintiff's sale.

Affirmed.

1. TAXATION — APPEAL — CONSTITUTIONAL LAW — TAX TRIBUNAL.

Review of a decision of the Tax Tribunal that is not related to valuation or allocation under the property tax laws is limited to determining whether such decision is authorized by law and whether it is supported by competent, material, and substantial evidence on the whole record (Const 1963, art 6, § 28).

2. TAXATION — USE TAX.

The use tax does not apply only to vehicles, airplanes, snowmobiles, and watercraft.

3. TAXATION — SALES TAX — USE TAX.

The sales tax is imposed upon the seller for the privilege of engaging in the business of making sales of tangible personal property at retail within this state; the purpose of the use tax is to impose a tax on the privilege of using, storing, or consuming tangible personal property in this state and is imposed upon the consumer or purchaser.

4. TAXATION — USE TAX.

The Use Tax Act does not limit the imposition of tax to those properties purchased out-of-state and brought into Michigan.

*Denfield, Timmer & Taylor* (by *Clifford W. Taylor),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *John W. Jackson, Jr.,* Assistant Attorneys General, for defendant.

Before: V. J. Brennan, P.J., and M. J. Kelly and N. J. Kaufman,* JJ.

Per Curiam. Plaintiff appeals as of right from the Michigan Tax Tribunal's September 10, 1982, order denying its request for a sales/use tax refund.

The underlying facts of this case are not in dispute. At all times relevant to this appeal, plaintiff was a Michigan corporation engaged in the computer leasing business. Plaintiff was not a sales tax registrant but was a use tax registrant. During early 1979, plaintiff sold a computer to Compu-Link Corporation, a Michigan corporation, in a casual and isolated transaction outside its usual business activities. On April 13, 1979, plaintiff paid $12,998 in tax on the gross sale of $325,-000. In late 1979, plaintiff began its attempt to obtain a refund, realizing that a sales tax was not due and payable on the casual and isolated transaction. After defendant's repeated refusals to issue a refund, plaintiff filed a complaint for mandamus with this Court. In an order entered February 23, 1981, this Court denied the petition for lack of merit on the grounds presented, as it appeared that plaintiff had a plain, speedy, and adequate alternate remedy before the Tax Tribunal.

On April 4, 1981, plaintiff petitioned the Tax Tribunal for review, contending that defendant wrongfully withheld its sales tax overpayment. The case was submitted on briefs. On August 13, 1982, Tax Tribunal Hearing Officer Julianna B. Miller entered her opinion and judgment. Hearing Officer Miller determined that plaintiff's sale of the computer was not subject to sales tax as the

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

sale was an isolated transaction. Hearing Officer Miller further concluded that the sale was not subject to use tax, as the use tax "was not intended to apply to in-state sales made outside the ordinary course of a transferor's business". Finally, Hearing Officer Miller ordered a hearing to determine whether the refund should be issued to plaintiff or Compu-Link Corporation. Defendant moved for reconsideration on August 26, 1982. On September 10, 1982, plaintiff filed a stipulation signed by plaintiff's vice president and the president of Compu-Link Corporation indicating that the refund referred to in Hearing Officer Miller's opinion should be issued to Compu-link Corporation. On the same date, Hearing Officer Miller issued her order regarding defendant's motion for reconsideration, vacating the conclusions of law contained in her prior opinion. Hearing Officer Miller determined that the transaction was subject to use tax, as the computer was purchased for use in Michigan and the transaction was not specifically exempted from use taxation.

The sole issue raised for our consideration is whether the Tax Tribunal erred in determining that Compu-Link Corporation was liable for use tax as a result of its purchase of a computer from plaintiff in an isolated transaction.

Decisions of the Tax Tribunal are appealable to this Court by right. MCL 205.753(1); MSA 7.650(53)(1). In reviewing a decision of the Tax Tribunal that is not related to valuation or allocation under the property tax laws, this Court's review is limited to determining whether such decision is authorized by law and whether it is supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28.

The Use Tax Act was enacted for the purpose of levying a specific tax for the privilege of using, storing, or consuming tangible personal property in this state. See *Goebel Brewing Co v State Bd of Tax Administration,* 306 Mich 222, 226; 10 NW2d 835 (1943), and MCL 205.93; MSA 7.555(3). The use tax is also applicable to the use or consumption of certain services. MCL 205.93a; MSA 7.555(3a). The tax rate is four percent of the price of such property or service. MCL 205.93; MSA 7.555(3).

Levy of the use tax is limited by 23 exemptions contained in MCL 205.94; MSA 7.555(4). Most importantly, the tax is not levied upon property on which a tax was paid under the General Sales Tax Act, MCL 205.51 *et seq.;* MSA 7.521 *et seq.:*

"The tax levied shall not apply to:
"Property sold in this state on which transaction a tax is paid under Act No. 167 of the Public Acts of 1933, as amended, being sections 205.51 to 205.78 of the Michigan Compiled Laws, if the tax was due and paid on the retail sale to a consumer." MCL 205.94(a); MSA 7.555(4)(a).

Application of the use tax is also limited by MCL 205.93; MSA 7.555(3), where three nontaxable transfers are described.

In the instant case, plaintiff sold a computer to Compu-Link Corporation. It is not contested that the computer was purchased for use in this state. The transaction was not a nontaxable transfer, as described in MCL 205.93; MSA 7.555(3). Thus, unless an exemption contained in MCL 205.94; MSA 7.555(4) is applicable, Compu-Link Corporation became liable for a use tax in connection with its acquisition of the computer from plaintiff. The sales tax exemption is inapplicable, because the transaction was an isolated sale by a person not

engaged in the business of retail sales and, thus, not subject to sales tax. See MCL 205.51(b); MSA 7.521(b) and 1979 AC, R 205.13. Plaintiff did not assert that the transaction fell within an enumerated exemption to the applicability of the use tax before the Tax Tribunal and does not argue the applicability of any express exemptions on appeal. Accordingly, the Tax Tribunal did not err in its determination that Compu-Link Corporation was liable for a use tax as a result of its acquisition of the computer from plaintiff. Because the appropriate use tax was collected from Compu-Link Corporation by plaintiff and remitted to defendant, no refund is required.

Although plaintiff has not specifically claimed that the transaction is within an express exemption to imposition of the use tax, it advances several arguments that should be addressed. Plaintiff first contends that the use tax only applies to isolated transactions involving vehicles, airplanes, snowmobiles, and watercraft. In support of its argument, plaintiff points to MCL 205.93; MSA 7.555(3) and 1979 AC, R 205.13. See also 1979 AC, R 205.135. The statute and administrative rules do not provide an exclusive list of tangible personal property subject to the use tax upon transfer in an isolated transaction. Instead, they describe the method for collecting use tax on the transfer of certain tangible personal property requiring a vehicle title or registration. The Use Tax Act does not contain an exemption for property acquired in an isolated transaction.

Plaintiff also argues that application of the use tax to the instant transaction renders meaningless the isolated transaction exemption in the General Sales Tax. This argument ignores the different purposes served by the sales and use taxes. The

sales tax is imposed upon the seller for the privilege of engaging in the business of making sales of tangible personal property at retail within this state. See *Detroit & Cleveland Navigation Co v Dep't of Revenue,* 342 Mich 234, 238; 69 NW2d 832 (1955), and 1979 AC, R 205.4. The retailer may include the amount of the tax in the selling price, but is not required to do so. See *Swain Lumber Co v Newman Development Co,* 314 Mich 437, 441; 22 NW2d 891 (1946), and *Laurentide Leasing Co v Schomisch,* 382 Mich 155, 160; 169 NW2d 322 (1969). Thus, although the sales tax is ordinarily paid by the purchaser, the direct legal incidence of the General Sales Tax Act falls upon the retailer. See, generally, *National Bank of Detroit v Dep't of Revenue,* 334 Mich 132, 138-139; 54 NW2d 278 (1952). In contrast, the purpose of the use tax is to impose a tax on the privilege of using, storing, or consuming tangible personal property in this state. The legal incidence of the use tax falls on the consumer or purchaser. Because the use tax exempts from taxation property on which a sales tax is paid, the two acts have been deemed complimentary. See, generally, *National Bank of Detroit, supra,* p 141. By imposing the use tax on the consumer in a transaction involving an isolated transaction, the isolated transaction exception to the sales tax is not rendered meaningless. Indeed, the sales tax exception's purpose has been fulfilled, as the nonretailer-seller is not burdened with the legal incidence of a tax imposed on the privilege of engaging in the business of selling tangible personal property at retail.

Plaintiff also argues that defendant's expansive interpretation of the Use Tax Act will lead to an unconscionable result, as a logical extension of defendant's interpretation of the act leads to the

conclusion that rummage sales, garage sales, church bazaars, and all other forms of casual transactions become taxable events. Initially, it must be noted that persons advertising, soliciting, and offering tangible personal property for sale for the purpose of repeated sales are deemed to be regularly engaged in business and these sales are not considered casual or isolated, even though they may be few or infrequent. 1979 AC, R 205.13(1). Thus, organizations and individuals regularly engaging in rummage sales, garage sales, and church bazaars, etc., are subject to the sales tax, unless otherwise exempt. In those cases where the rummage sales, garage sales, and church bazaars, etc., are in fact isolated transactions and no sales tax is due, we can see no unconscionability in exaction of a use tax from the purchaser. This is especially true because one of the purposes of the Use Tax Act was to reach those purchases made by Michigan consumers that are not reached by the General Sales Tax Act. See *National Bank of Detroit, supra,* p 141. In any event, it is for the Legislature, and not this Court, to determine the wisdom and the policy reasons for imposing a particular tax. *Stockler v Dep't of Treasury,* 75 Mich App 640, 644; 255 NW2d 718 (1977), *lv den* 402 Mich 802 (1977).

In its initial opinion and judgment, the Tax Tribunal determined that the use tax was not intended to apply to in-state sales. This conclusion is ostensibly supported by language in cases stating that the use tax was intended to compliment the General Sales Tax Act by imposing a tax on tangible personal property purchased out-of-state for use, storage, or consumption in Michigan. See, *e.g., Bailey v Muskegon County Bd of Comm'rs,* 122 Mich App 808; 333 NW2d 144 (1983); *Kal-*

*Aero, Inc v Dep't of Treasury,* 123 Mich App 46; 333 NW2d 171 (1983); *Macabees Mutual Life Ins Co v Dep't of Treasury,* 122 Mich App 660; 332 NW2d 561 (1983); *Southeastern Michigan Transportation Authority v Secretary of State,* 104 Mich App 390, 399-400; 304 NW2d 846 (1981); *Michigan Wisconsin Pipe Line Co v Michigan,* 58 Mich App 318, 320; 227 NW2d 334 (1975), *lv den* 394 Mich 822 (1975); *Western Electric Co v Dep't of Revenue,* 312 Mich 582, 596; 20 NW2d 734 (1945); *Banner Laundering Co v State Bd of Tax Administration,* 297 Mich 419, 429; 298 NW 73 (1941). As a matter of historical fact, these cases are correct in stating that one of the purposes behind enactment of the Use Tax Act was to compliment the General Sales Tax Act and prevent the possibility of sales tax avoidance, as described in *Lockwood v Comm'r of Revenue,* 357 Mich 517, 545-546; 98 NW2d 753 (1959):

"The sales tax came to us in the depth of a great depression in order to provide the means for fulfilling desperate governmental needs. It was a tax easily collected and possessing the power of producing vast revenue. No meal could be consumed without its payment, no shelter built, no clothing purchased without meeting its exaction, and in advance. It fell on all alike, and without regard to want or ability to bear the tax. Vast sums poured into the State treasury. We will, shortly, look to the distribution of these funds, since therein lies the origin of the situation resulting in the controversy before us. But first we look to the other tax here involved, the use tax.

"The sales tax, powerful though it was, was vulnerable to avoidance. If the purchase, possibly of an automobile, were made not in Michigan but in a neighboring State the Michigan sales tax would not apply. Thus not only did the State of Michigan lose the tax moneys but a Michigan merchant lost the sale. It was a double-edged sword. To meet the threat of avoidance a tax was

enacted. The article purchased in another State would be taxed in Michigan by virtue of its use here, and at the same rate as if sold in Michigan in the first place. This was the use tax. Through its enactment the flight across the border was blocked, and the Michigan merchant protected in his competitive position, and the State tax funds safeguarded."

However, the Use Tax Act, as written, does not limit its imposition to those properties purchased out-of-state and brought into Michigan. As a practical matter, most in-state purchases are exempt from the use tax, because of the exemption for property on which a sales tax is paid. Nonetheless, the Legislature has not provided a use tax exemption covering in-state acquisitions of tangible personal property on which a sales tax is not paid. Absent an exemption, the use tax is applicable to the transfer of tangible personal property in this state. Thus, the Tax Tribunal properly denied plaintiff's request for a refund.

Affirmed.