PEOPLE *v.* BOB-LO EXCURSION COMPANY.

1. COMMERCE—NAVIGATION.

    The word "commerce" comprehends navigation.

2. SAME—FOREIGN COMMERCE.

    In regulating commerce with foreign nations, the power of congress does not stop at the jurisdictional lines of the several States as such commerce is that of the whole United States.

3. SAME—FOREIGN COMMERCE—CONGRESS.

    A vessel engaged in foreign commerce is subject to the regulating power of congress.

4. SAME—FOREIGN COMMERCE—EXCURSION STEAMERS TO CANADIAN AMUSEMENT PARK.

    Corporation which owned an amusement park on an island in Canada and operated excursion steamers thereto from a Michigan port was engaged in foreign commerce.

5. COURTS—FOREIGN COMMERCE CASES—PRECEDENTS.

    Since by the Constitution of the United States the power to regulate both foreign and interstate commerce is vested in congress, due consideration must be given by a State supreme court to pertinent decisions of the supreme court of the United States dealing with foreign commerce (U. S. Const. art. 1, § 8, clause 3).

6. COMMERCE—STATE STATUTES—INTERSTATE OR FOREIGN COMMERCE.

    State legislation materially affecting interstate or foreign commerce is invalid even where congress has not acted (U. S. Const. art. 1, § 8, clause 3).

7. SAME—CIVIL RIGHTS ACT—FOREIGN COMMERCE—PUBLIC CONVEYANCES.

    State civil rights act *held*, not invalid as to Michigan corporation engaged in foreign commerce where only result of enforcement will be to require it, in operating its ships as public conveyances, to accept as passengers, persons of the negro race indiscriminately with others, since it will not impose any undue burden on such corporation and is not in conflict with

pertinent Federal regulations (U. S. Const. art. 1, § 8, clause 3; R. S. § 1977; Act No. 328, § 146, Pub. Acts 1931, as amended by Act No. 117, Pub. Acts 1937).

8. CARRIERS—INTERSTATE COMMERCE—DISCRIMINATION AGAINST NE-GROES.

Interstate commerce act, though literally applicable to common carriers, in prohibiting such carrier from subjecting any particular person to any undue or unreasonable prejudice, indicates character of Federal regulation with respect to discrimination against negroes (R. S. § 1977; 49 USCA, § 3).

9. COMMERCE—FOREIGN COMMERCE—STATE CIVIL RIGHTS ACT.

State civil rights act is applicable to corporation engaged in the operation of public conveyances from Michigan port to island in Canada largely owned by it and on which it had an amusement park, since corporation was engaged in foreign commerce (Act No. 328, § 146, Pub. Acts 1931, as amended by Act No. 117, Pub. Acts 1937).

10. SAME—CARRIERS—INTERSTATE OR FOREIGN COMMERCE.

One may be engaged in interstate or foreign commerce notwithstanding he is not a common carrier.

11. SAME—FOREIGN COMMERCE—STATE STATUTES—POLICE POWER.

Although State legislation affects foreign commerce incidentally, indirectly, or remotely, yet where it does not undertake to regulate such commerce and is no more than a bona fide, legitimate, and reasonable exercise of the reserved police power of the State in respect of a matter of local or internal concern, it is valid in the absence of conflicting and superseding legislation by congress in the exercise of its superior authority to regulate such commerce.

Appeal from Recorders Court for the City of Detroit; Maher (John J.), J. Submitted January 16, 1947. (Docket No. 83, Calendar No. 43,302.) Decided April 17, 1947. Rehearing denied June 12, 1947. Affirmed on appeal to Supreme Court of the United States February 2, 1948.

Bob-Lo Excursion Company, a Michigan corporation, was convicted of violation of civil rights statute. Affirmed.

*Wilson W. Mills,* for appellant.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, and *Andrew DeMaggio,* Assistant Prosecuting Attorney, for the people.

NORTH, J. The Bob-Lo Excursion Company, a Michigan corporation, having waived trial by jury was tried in the recorder's court of Detroit and found guilty of having violated the so-called civil rights statute of Michigan (Act No. 328, § 146, Pub. Acts 1931, as amended by Act No. 117, Pub. Acts 1937 [Comp. Laws Supp. 1940, § 17115–146, Stat. Ann. 1946 Cum. Supp. § 28.343]). From its conviction defendant has appealed.

Defendant admits that in June, 1945, its agents compelled a negro girl, the complaining witness herein, to disembark from one of its ships at the wharf in Detroit and denied her accommodations on its ship solely because she was a colored person. She was tendered repayment of the purchase price of her ticket. For its discriminatory action in refusing passage to the negro girl, defendant was prosecuted and convicted under the cited act. The pertinent portion of the statute reads:

"SEC. 146. All persons within the jurisdiction of this State shall be entitled to full and equal accommodations, advantages, facilities and privileges of * * * public conveyances on land and water * * * and all other places of public accommodation, amusement, and recreation, where refreshments are or may hereafter be served, subject only to the conditions and limitations established by law and applicable alike to all citizens and to all citizens alike, with uniform prices."

Among the various purposes for which defendant was incorporated are: "To lease, own and operate amusement parks in Canada, and to charter, lease,

own and operate excursion steamers and ferry boats in interstate and foreign commerce, together with dock and terminal facilities pertaining thereto." Decision herein presents the question as to whether defendant is engaged in foreign commerce. Defendant asserts that it is so engaged and in consequence thereof defendant claims that the quoted statute is not applicable and that defendant's conviction thereunder was unlawful.

In 1945 defendant's business was chiefly devoted to transportation of passengers to and from Bob-Lo island (also known as Bois Blanc) and the operation of facilities for recreation and amusement owned by it on Bob-Lo island. Except for four lots this island is owned by defendant. It is a part of the Province of Ontario, Dominion of Canada. Only defendant's ships have access to Bob-Lo island. Ordinarily these ships make round trips between Detroit and the island, but occasionally they also make round trips between Windsor, Ontario, and Bob-Lo island. But defendant does not transport passengers from Canada to Michigan. In traveling between Detroit and the island defendant's ships cross the international boundary line several times and are in Canadian waters for about a half of the voyage. Defendant's ships are required by Federal law to be enrolled by the United States customs service, and the enrollment license must be renewed annually. Defendant's commerce activities and ships are subject to regulations and inspection by the United States treasury, the United States immigration service, the United States navy department and the United States army engineers. Its ships are also regulated by similar governmental agencies of the Dominion of Canada.

In the case of *Gibbons* v. *Ogden,* 9 Wheat. (22 U. S.) 1, 190 and 195, (6 L. Ed. 23) Chief Justice

Marshall speaking for the supreme court of the United States, said:

"All America understands, and has uniformly understood, the word 'commerce,' to comprehend navigation.  *   *   *

"But in regulating commerce with foreign nations, the power of congress does not stop at the jurisdictional lines of the several states. It would be a very useless power, if it could not pass those lines. The commerce of the United States with foreign nations, is that of the whole United States."

In the case of *Lord* v. *Steamship Co.*, 102 U. S. 541 (26 L. Ed. 224), the Supreme Court said:

"The single question presented by the assignment of errors is, whether Congress has power to regulate the liability of the owners of vessels navigating the high seas, but engaged only in the transportation of goods and passengers between ports and places in the same State. It is conceded that while the Ventura carried goods from place to place in California, her voyages were always ocean voyages."

The question was resolved as follows:

"Commerce includes intercourse, navigation, and not traffic alone.  *   *   *

"The Pacific Ocean belongs to no one nation, but is the common property of all. When, therefore, the Ventura went out from San Francisco or San Diego on her several voyages, she entered on a navigation which was necessarily connected with other nations. While on the ocean her national character only was recognized, and she was subject to such laws as the commercial nations of the world had, by usage or otherwise, agreed on for the government of the vehicles of commerce occupying this common property of all mankind. She was navigating among the vessels of other nations and was

treated by them as belonging to the country whose flag she carried. True, she was not trading with them, but she was navigating with them, and consequently with them was engaged in commerce. If in her navigation she inflicted a wrong on another country, the United States, and not the State of California, must answer for what was done. In every just sense, therefore, she was, while on the ocean, engaged in commerce with foreign nations, and as such she and the business in which she was engaged were subject to the regulating power of congress."

In view of the holdings in *Gibbons* v. *Ogden,* and *Lord* v. *Steamship Co., supra,* and of like holdings in many other cases which might be cited, it must be held in the instant case that the defendant is engaged in foreign commerce. And in the light of that determination decision must be made as to whether the so-called civil rights statute of Michigan, above cited, is valid or at least whether it is applicable to defendant under the facts and circumstances of the instant case. And in turn decision of that issue hinges on whether the cited Michigan civil rights statute imposes an unreasonable burden on foreign commerce. Since by the Federal Constitution the power to regulate both foreign and interstate commerce is vested in Congress,* due consideration must be given to pertinent decisions of the supreme court of the United States. We have so held as to interstate commerce, and that holding is equally applicable to foreign commerce.

"The power given congress by the United States Constitution to regulate commerce among the sev-

---

* U. S. Const. art. I, § 8.

"The Congress shall have Power  *  *  *

(3) To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

eral States is exclusive, and the decisions of the
United States supreme court upon that question
are controlling.'' (Syllabus) *People* v. *White,* 197
Mich. 283.

Many cases hold that State legislation which un-
duly burdens interstate or foreign commerce is
invalid, even where Congress has not acted. Such
is the holding in the very recent decision of the
United States supreme court in *Morgan* v. *Virginia,*
328 U. S. 373 (66 Sup. Ct. 1050, 90 L. Ed. 1317).
As stated in the headnotes (Sup. Ct.) in that case,
the court held:

''State legislation or a final court order materi-
ally affecting interstate commerce is invalid, even
where congress has not acted.

''Where congress has not acted, a State may val-
idly enact legislation affecting interstate commerce,
where the legislation has predominantly only a local
influence on the course of interstate commerce.

''State legislation is invalid if it unduly burdens
interstate commerce in matters where uniformity
is necessary in the constitutional sense of useful in
accomplishing a permitted purpose.

''Because the Constitution puts the ultimate
power to regulate interstate commerce in congress,
rather than in the States, the degree of State legis-
lation's interference with that commerce may be
weighed by Federal courts to determine whether
the burden makes the State statute unconstitu-
tional.''

We have given careful consideration to the vari-
ous decisions upon which defendant relies, particu-
larly *Hall* v. *DeCuir,* 95 U. S. 485 (24 L. Ed. 547);
*Pryce* v. *Swedish-American Lines,* 30 Fed. Supp.
371; *Henderson* v. *New York,* 92 U. S. 259 (23 L. Ed.
543); and *Board of Trustees of University of Illi-
nois* v. *United States,* 289 U. S. 48 (53 Sup. Ct. 509,
77 L. Ed. 1025). However, we are of the opinion

that each of the above cases either by reason of the factual background or the legal issue involved must be distinguished from the instant case. In the *Hall-DeCuir Case,* the court based decision upon the assumption that by reason of traversing the waters of various States and stopping at ports in such States the carrier might meet with statutory requirements of various types, and with which the Louisiana statute might be in conflict and compliance with both would be quite impossible. Under such circumstances the court held invalid the Louisiana statute which required "those engaged in interstate commerce to give all persons travelling in that State, upon the public conveyances employed in such business, equal rights and privileges in all parts of the conveyance, without distinction or discrimination on account of race or color." Obviously the carrier in the instant case is not in its business confronted with the circumstances which led the court in the *Hall-DeCuir Case* to hold that the Louisiana statute imposed an undue burden upon interstate commerce. In the instant case it quite conclusively appears that defendant in carrying on its commerce or transportation. will not be subjected to an undue burden arising from conflicting regulations by being required to render its services alike to both white and colored persons.

*Pryce* v. *Swedish-American Lines, supra,* is not a decision of a court of last resort and the court seems to have rather summarily based its decision, so far as its application to the instant case is concerned, upon the holding in *Hall* v. *DeCuir,* just above considered. Decisions in *Henderson* v. *New York, supra,* and *Board of Trustees of University of Illinois* v. *United States, supra,* are not particularly applicable to the instant case. Neither involved discrimination based on race or color. In

effect the *Henderson* decision was merely that a State is without power to impose unreasonable requirements or a tax upon foreign commerce. And the holding in *Board of Trustees of University of Illinois* v. *United States* was merely to the effect that "States and their instrumentalities" are not "relieved of the duties on articles imported by them" in foreign commerce.

The decisions cited by defendant are not controlling of the instant case unless it appears that the Michigan civil rights act imposes an undue burden on the foreign commerce in which defendant is engaged. That issue is material to decision in the instant case. But we are of the opinion that holding the provisions of the Michigan statute effective and applicable in the instant case results only in this, defendant will be required in operating its ships as "public conveyances" to accept as passengers persons of the negro race indiscriminately with others. Our review of this record does not disclose that such a requirement will impose any undue burden on defendant in its business in foreign commerce. As applied to the facts in the instant case the Michigan civil rights statute is neither in derogation of or in conflict with pertinent Federal regulations. Instead the mandate of the Michigan statute is in accord with the Federal civil rights act, which contains the following:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." R. S. § 1977; 8 USCA § 41.

While literally the provision of the interstate commerce act about to be noted applies to common

carriers, nonetheless it is indicative of the character of Federal regulations in this field of the law. The interstate commerce act prohibits common carriers from subjecting any person "to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." See paragraph 1, § 3 of the interstate commerce act, 49 USCA. Referring to the above provision the United States supreme court has said:

"Paragraph 1 of § 3 of the act says explicitly that it shall be unlawful for any common carrier subject to the act 'to subject any particular person * * * to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.' 49 USCA § 3. From the inception of its administration the interstate commerce commission has recognized the applicability of this provision to discrimination against colored passengers because of their race and the duty of carriers to provide equality of treatment with respect to transportation facilities; that is, that colored persons who buy first-class tickets must be furnished with accommodations equal in comforts and conveniences to those afforded to first-class white passengers." *Mitchell* v. *United States,* 313 U. S. 80, 95 (61 Sup. Ct. 873, 85 L. Ed. 1201).

There is no escape from the conclusion that defendant herein is engaged in the business of operating "public conveyances" by water, and the Michigan statute provides: "All persons within the jurisdiction of this State shall be entitled to full and equal accommodations" afforded by such conveyances. The Michigan enactment has been held constitutional. *Bolden* v. *Grand Rapids Operating Corp.,* 239 Mich. 318 (53 A. L. R. 183). Our conclusion is not only that the Michigan civil rights act is constitutional but that it is applicable to the business carried on by defendant; and further that

it does not impose an undue burden on defendant's commerce activities.

In arriving at the above conclusion we are mindful of our decision in *Meisner* v. *Detroit, Belle Isle & Windsor Ferry Co.*, 154 Mich. 545 (19 L. R. A. [N. S.] 872, 129 Am. St. Rep. 493), wherein the present defendant's corporate predecessor was defendant. It was there held that the defendant engaged in the same business activities as defendant in the instant case, "is not, as to the enterprise named, a common carrier, and it may refuse to carry to such park anyone at its pleasure." But the holding in the cited case is not controlling in the instant case because the former decision turned solely on the holding that the defendant therein was not a common carrier. The report of the *Meisner* decision states: "The action is in tort, alleging a breach of defendant's duty *as a common carrier* of passengers." It does not appear in the *Meisner Case* that plaintiff asserted a right under the Michigan civil rights statute; whereas in the case at bar that statute is of controlling importance. In the instant case decision is not controlled by defendant's being or not being a common carrier. Whatever its classification in that respect may be, it unequivocally appears from the record that it operates "public conveyances on * * * water" and that such operations have their inception in this State, wherein the statute provides all persons within the jurisdiction of the State shall be entitled to full and equal accommodations of such public conveyances. It is not amiss to note that one may be engaged in interstate or foreign commerce notwithstanding he is not a common carrier. An example of such a status is found in the operators of trucks who are contract carriers. But such carriers upon crossing State lines become engaged in inter-

state commerce, and upon crossing National lines become engaged in foreign commerce. Nonetheless they are not common carriers. *Michigan Public Utilities Commission* v. *Duke,* 266 U. S. 570 (45 Sup. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105).

The law of interstate commerce, but applicable alike to foreign commerce, in the light of which the instant case must be decided, with numerous supporting citations, is stated in 15 C. J. S. p. 268, as follows:

"However, the constitutional grant to Congress of power to regulate interstate commerce, although operating of its own force to curtail State power in some measure, does not forestall all State action affecting interstate commerce; it does not withdraw from the States power to legislate in respect of their local concerns, even though such legislation may indirectly and incidentally affect interstate commerce. Although State legislation affects interstate commerce incidentally, indirectly, or remotely, yet where it does not undertake to regulate such commerce and is no more than a bona fide, legitimate, and reasonable exercise of the reserved police power of the State in respect of a matter of local or internal concern, it is valid and   *   *   *   will stand, in the absence of conflicting and superseding legislation by Congress in the exercise of its superior authority to regulate commerce among the States."

The decision of the lower court is affirmed.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.