BOB-LO COMPANY v DEPARTMENT OF TREASURY

Docket No. 56194. Submitted December 1, 1981, at Lansing.—Decided January 6, 1982.

Bob-Lo Company brought an action against the Department of Treasury in the Court of Claims, seeking recovery of use taxes assessed against and paid by it between July 1, 1971, and December 31, 1974. Following review of the pleadings, a stipulation of facts, and briefs of the parties, the Court of Claims dismissed Bob-Lo's claim, Michael G. Harrison, J. Bob-Lo appeals. *Held:*

1. Bob-Lo was not exempt from paying Michigan Use Tax by virtue of its having paid the watercraft tonnage tax.

2. Michigan has the power to impose a usage tax on fuel, supplies, provisions, maintenance, and repairs used in the operation of watercraft owned in Michigan and engaged in foreign commerce.

3. The record reveals that Bob-Lo's vessels were owned by a Michigan corporation and were engaged in foreign commerce and not interstate commerce for the purpose of applying the statutory use tax exemption.

4. It is unnecessary to decide whether the use tax exemption for vessels engaged in interstate commerce constitutes a denial of equal protection because the remedy for such denial would be to strike down the exemption, leaving Bob-Lo still liable to pay the use tax.

Affirmed.

1. Taxation — Commerce — Watercraft — Tax Exemptions.

The legislative purpose of the watercraft tonnage tax act when enacted was to exempt vessels from general property taxation upon payment of the tonnage tax but not to exempt the purchase of supplies and materials for the exclusive use of such

References for Points in Headnotes.
[1, 4] 68 Am Jur 2d, Sales and Use Taxes § 219.
   71 Am Jur 2d, State and Local Taxation § 106.
[2] 71 Am Jur 2d, State and Local Taxation § 326.
[3, 4] 15A Am Jur 2d, Commerce § 81.
   71 Am Jur 2d, State and Local Taxation § 421.

vessels from sales and use taxation even where the vessel is engaged in foreign commerce (1911 PA 70, MCL 207.51; MSA 7.281, since repealed, 1974 PA 153, MCL 205.93, 205.94[k]; MSA 7.555[3], 7.555[4][k]).

2. TAXATION — STATUTES — TAX EXEMPTIONS.
   Tax exemption statutes are to be construed strictly in favor of the taxing unit.

3. TAXATION — CONSTITUTIONAL LAW — INTERSTATE COMMERCE — FOREIGN COMMERCE.
   An activity which has a substantial nexus or relationship to a state and which is fairly related to services provided by the state may be taxed by the state, and such a tax does not constitute an impermissible burden on interstate or foreign commerce even where it increases the cost of doing business.

4. TAXATION — WATERCRAFT — INTERSTATE COMMERCE — FOREIGN COMMERCE — TAX EXEMPTIONS.
   Michigan has the power to impose a use tax on fuel, supplies, provisions, maintenance, and repairs used in the operation of watercraft of 500 tons or more designed for commercial use and operating in foreign commerce; however, where the vessel is engaged in interstate commerce such sales are exempt from taxation (MCL 205.93, 205.94; MSA 7.555[3], 7.555[4]).

*Donovan, Hammond, Carson, Ziegelman, Roach & Sotiroff* (by *Thomas E. Reiss),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *Curtis G. Beck,* Assistants Attorney General, for defendant.

Before: V. J. BRENNAN, P.J., and ALLEN and T. C. MEGARGLE,* JJ.

ALLEN, J. Plaintiff corporation appeals of right from a judgment entered by the Court of Claims on January 23, 1981, dismissing plaintiff's claim for the recovery of use taxes assessed against and paid by plaintiff for the period of July 1, 1971,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

through December 31, 1974, in the amount of $21,674.22, plus $5,252.41 interest, for a total of $26,936.63. The assessment in issue was upheld by the State Board of Tax Appeals in an opinion and order dated May 31, 1979, and by the Court of Claims in an opinion dated December 22, 1979.

According to the stipulated statement of facts filed in the Court of Claims, plaintiff is a Michigan corporation operating two pleasure steamers (SS St. Clair and SS Columbia) which transport passengers over navigable waters from Detroit to Wyandotte, Michigan, and then to the Island of Bob-Lo (Bois Blanc Island), Ontario, Canada. Some voyages originate in Windsor, Canada, proceed to Detroit and Wyandotte, and terminate at Bob-Lo Island. Occasional cruises are scheduled on Lake Erie traversing a route through Michigan, Canadian, and Ohio waters. Tickets for the voyage are purchased at Detroit, Wyandotte, or Windsor.

During the period in question, plaintiff made expenditures for fuel, provisions, supplies, maintenance, and repairs for the exclusive use of its two vessels. The taxed items were purchased from Michigan or out-of-state business firms and were received by plaintiff in Michigan. It is these items that are the subject of the challenged taxes. The ships, Columbia and St. Clair, are in excess of 500 tons in weight, and, during the period in question, plaintiff paid the tax levied under the watercraft tonnage tax act, MCL 207.51; MSA 7.281, since repealed, 1974 PA 153.

Plaintiff raises four grounds for its claim that the assessments in question were improper: (1) the express provisions of the watercraft tonnage tax act exempt plaintiff from assessment; (2) the tax is a tax on foreign commerce prohibited by the Commerce Clause of the United States Constitution; (3)

§ 4(k) of the Use Tax Act, MCL 205.94(k); MSA 7.555(4)(k), specifically exempts vessels of over 500 tons engaged in interstate commerce; and (4) to tax vessels engaged in foreign commerce while exempting from taxation vessels engaged in interstate commerce denies plaintiff equal protection of the law. Analysis of each issue follows.

1. *Is plaintiff exempt by reason of § 1 of the watercraft tonnage tax act?*

Section 1 of the watercraft tonnage tax act, MCL 207.51; MSA 7.281, now repealed, but in effect for the period for which assessments were made in the instant case, provided in relevant part:

"SECTION 1. In consideration of an annual payment to the secretary of state by the owner of any vessel, barge or boat exclusively engaged in the carrying of passengers, holding license for such purpose, or carrying passengers and freight, owned within this state or hailing from any port thereof, and employed in the navigation of international waters or waters of the great lakes, of a sum equal to 20 cents per net ton on the registered tonnage thereof * * * *and such payment shall be received in lieu of all taxes, and such vessel, barge or boat shall be and the same is hereby made exempt from all further taxation, either state, county or municipal,* upon the payment of the sums herein provided. No payment made under the provisions of this section shall be less than $10.00." (Emphasis supplied.)

Plaintiff contends that it is exempt from the imposition of the use tax by the plain and unambiguous language contained in the emphasized words cited above. The Court of Claims held that when the watercraft tonnage tax act was enacted in 1911, 1911 PA 70, use and sales taxes were virtually unknown and that the sole purpose of the statute was to exempt specified watercraft from general property taxation but did not operate

to exempt purchases of supplies and materials for the exclusive use of such watercraft from sales and use taxation. We are persuaded that the better reasoning lies with the Court of Claims.

To the extent that the legislative purpose of the watercraft tonnage tax act of 1911 has been questioned, it has consistently been held that the purpose of the statute was to exempt vessels from · general property taxation. Three opinions of the Attorney General have construed the statute in such manner. OAG, 1912, p 206 (December 28, 1911), OAG, 1948-1950, No 945, p 220 (May 20, 1949), 2 OAG, 1955-1956, No 1987, p 2 (January 13, 1956). In *Mackinac Transportation Co v Twp of Mackinaw,* 175 Mich 418; 141 NW 554 (1913), the Supreme Court, after asking for briefs "upon the force and effect" of the watercraft tonnage tax act, affirmed the trial court's interpretation of the law "as expressing legislative intention to exempt, at the election of the owner, such property from general taxation for the year 1912, and not earlier". *Id.,* 421. Because sales and use taxes were not in effect in Michigan until 1937, none of the decisions raised the issue of whether the statute extended the exemption to taxes not in the nature of a property or ad valorem tax such as use or privilege taxes.

When Michigan enacted the Use Tax Act, MCL 205.91; MSA 7.555(1), in 1937, the Legislature for the first time was confronted with the question of whether such tax would exclude purchases made for goods and supplies used on vessels. A clear indication that the Legislature did not intend the exemption in § 1 of the watercraft tonnage tax act to extend to nonproperty taxes is found in §§ 3 and 4 of the Use Tax Act.[1] Section 3 levies and collects

---

[1] MCL 205.93, 205.94; MSA 7.555(3), 7.555(4).

"*from every person* in this state a specific tax for the privilege of using, storing or consuming tangible personal property in this state * * *". Section 4 proceeds to list exemptions (a) through (w). Exemption (k) reads:

"A vessel designed for commercial use of registered tonnage of 500 tons or more, when produced upon special order of the purchaser, *and bunker and galley fuel, provisions, supplies, maintenance, and repairs for the exclusive use of a vessel of 500 tons or more engaged in interstate commerce.*" (Emphasis added.)

The flaw in plaintiff's claim is the assumption that the Legislature in 1911 intended by its exemptory language to include all future taxation of a nature foreign to its deliberations. If plaintiff's interpretation in this respect were accurate, all vessels carrying passengers in the waters of the great lakes would be exempt from the Use Tax Act and it either would be superfluous to include such vessels in the list of exemptions, or, alternatively, the exemption, if spelled out in the statute, should apply to vessels regardless of their size or whether they were engaged in intrastate, interstate, or foreign commerce. The very fact that exemption (k), cited above, refers only to vessels of 500 tons or more engaged in interstate commerce belies the fact that § 1 of the watercraft tonnage tax act of 1911 included privilege and use type taxes.

Other jurisdictions confronted with broadly worded exemptions in old statutes have refused to apply the exemption to new or different forms of taxation enacted a number of years later. In *Connecticut Light & Power Co v Walsh,* 134 Conn 295, 305; 57 A2d 128 (1948), plaintiffs claimed that they were exempt from the state's use tax act of 1947

because of a 1915 statute which provided that the tax upon gross earnings of certain utility companies was "in lieu of all other taxation in this state upon each such company * * *". The court rejected the plaintiffs' claim, saying that use taxes were not known in 1915, that a use tax was not a tax on property but was in the nature of an excise tax upon the privilege of storing or using property, and that since the purpose of the 1915 act was to replace the property tax as to public utilities it would be unreasonable to conclude that the 1915 Legislature intended that the 1915 act exempt future taxes of a kind not generally known and of a different nature than the former property tax.

In *Oxford v Housing Authority of City of Barnesville,* 104 Ga App 797, 798; 123 SE2d 175 (1961), the Georgia court refused to extend exemptions granted housing authorities in 1937, and reading "such property and an authority shall be exempt from all taxes * * *", to sales and use taxes enacted in 1951. In *Security Life & Accident Co v Heckers,* 177 Colo 455, 457; 495 P2d 225 (1972), plaintiffs argued that they were exempt from the Colorado Sales Tax Act of 1965 by reason of a 1907 statute imposing a tax on the gross amount of premiums collected by insurance companies and further providing "an no other occupation tax or other taxes shall be levied or collected from any insurance company * * *". No exemption was given insurance companies when the sales tax statute was passed. The court held:

"If the legislature had intended to exempt insurance companies from the sales and use taxes in 1965, it would have been a simple matter for it to have amended the appropriate sections of the Sales and Use Tax Act. Not having elected to do so, we cannot by construction do so." *Id.,* 462.

Similar holdings are found in other jurisdictions. *Farm & Home Savings Ass'n v Spaulding,* 538 SW2d 313 (Mo, 1976) (1945 statute granting tax exemptions to savings and loan associations held not to include a 1959 enacted Compensating Use Tax Law), *Supreme Council of the Royal Arcanium v State Tax Comm,* 358 Mass 111; 260 NE2d 822 (1970) (fraternal society organized under a 1958 statute providing exemption from all taxes except taxes on real estate and office equipment held not to extend to sales and use taxes imposed in 1967).

Tax exemption statutes are to be construed strictly in favor of the taxing unit. *Michigan Baptist Homes & Development Co v Ann Arbor,* 396 Mich 660, 670; 242 NW2d 749 (1976), *Christian Reformed Church in North America v Grand Rapids,* 104 Mich App 10, 22; 303 NW2d 913 (1981). Nothing in the Michigan Use or General Sales Tax Acts specifically exempts vessels of over 500 tons engaged in foreign commerce from the payment of use or sales taxes. Decisions from other jurisdictions uniformly refuse to apply broadly worded exemptions in earlier acts to later adopted excise taxes. Accordingly, we conclude that plaintiff is not exempt from the Michigan use tax by virtue of having paid the tonnage tax.

2. *Does the Commerce Clause of the United States Constitution preclude Michigan from imposing a use tax on fuel, supplies, provisions, maintenance, and repairs used in the operation of plaintiff's vessels?*

Pursuant to exemption (k), the Department of Treasury promulgated Rule 81 which reads:

"(1) Sales of vessels designed for commercial use of registered tonnage of 500 tons or more, when produced upon special order of the purchaser, are exempt. Also nontaxable are sales of bunker and galley fuel, provi-

sions, supplies, maintenance, and repairs for the exclusive use of those vessels of 500 tons or more, if those vessels travel from a point in Michigan to a destination in another state. Sales of such items for the use of vessels operating in foreign commerce are taxable." 1979 AC, R 205.131.

Citing *Spector Motor Service, Inc v O'Connor,* 340 US 602; 71 S Ct 508; 95 L Ed 573 (1951), plaintiff argues that no state may exercise, without authority from Congress, regulatory power over foreign or interstate commerce, and any use of the state's taxing power which places a direct burden on such commerce is invalid. It is plaintiff's claim that Rule 81 in itself imposes a burden on foreign commerce and infringes on the power granted Congress under Article 1, § 8(3) of the United States Constitution to regulate commerce with foreign nations.

The *Spector* rule, as it came to be known, stemmed from a series of early decisions by the United States Supreme Court holding that any tax on the privilege of engaging in an activity of the state—such as buying and storing goods—could not be levied on an activity which was part of interstate commerce. Under *Spector,* a tax on interstate sales, even if fairly apportioned and nondiscriminatory, was unconstitutional per se.

Recent decisions of the United States Supreme Court have disavowed, or at least substantially modified, the *Spector* rule and its progeny. No longer is a direct tax on interstate sales per se unconstitutional even if it increases the cost of doing business. *Complete Auto Transit, Inc v Brady,* 430 US 274; 97 S Ct 1076; 51 L Ed 2d 326 (1977). In *Brady,* Mississippi imposed a sales tax of 5% on plaintiff's gross sales in Mississippi. Plaintiff was a Michigan corporation engaged in the

business of hauling cars manufactured by General Motors and shipped by rail to Jackson, Mississippi, where they were then loaded onto plaintiff's trucks and transported to Mississippi dealers. Plaintiff claimed that its own operations were but one part of an interstate movement and that the taxes assessed were unconstitutional as being burdensome to interstate commerce. In a unanimous decision written by Justice Blackmun, the Court overruled *Spector* and sustained the tax saying:

"Appellee, in its turn, relies on decisions of this Court stating that '[i]t was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing business,' *Western Live Stock v Bureau of Revenue,* 303 US 250, 254 [58 S Ct 546; 82 L Ed 823; 115 ALR 944] (1938). These decisions have considered not the formal language of the tax statute but rather its practical effect, *and have sustained a tax against Commerce Clause challenge when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.*

"Over the years, the Court has applied this practical analysis in approving many types of tax that avoided running afoul of the prohibition against taxing the 'privilege of doing business,' but in each instance it has refused to overrule the prohibition. Under the present state of the law, the *Spector* rule, as it has come to be known, has no relationship to economic realities. Rather it stands only as a trap for the unwary draftsman.

\* \* \*

"Not only has the philosophy underlying the rule been rejected, but the rule itself has been stripped of any practical significance. If Mississippi had called its tax one on 'net income' or on the 'going concern value' of appellant's business, the *Spector* rule could not invalidate it. There is no economic consequence that follows

necessarily from the use of the particular words, 'privilege of doing business,' and a focus on that formalism merely obscures the question whether the tax produces a forbidden effect. Simply put, the *Spector* rule does not address the problems with which the Commerce Clause is concerned. Accordingly, we now reject the rule of *Spector Motor Service, Inc v O'Connor,* that a state tax on the 'privilege of doing business' is per se unconstitutional when it is applied to interstate commerce, and that case is overruled." (Emphasis supplied.) *Id.,* 279, 288-289.

Similarly, in *United Airlines, Inc v Mahin,* 410 US 623; 93 S Ct 1186; 35 L Ed 2d 545 (1973), the Supreme Court upheld a use tax levied on aviation fuel purchased and stored in Illinois and loaded on plaintiff's planes which used the fuel in interstate and foreign commerce. The language in the Illinois use tax act was similar to the Michigan use tax statute under which Bob-Lo was taxed in the instant case. From 1955 through 1963, the tax was imposed on only the fuel actually consumed within the state. Beginning in 1963, the Illinois Revenue Department changed its regulations so as to impose the tax on all fuel that was either stored within Illinois or loaded upon the plaintiff's airplanes in that state. The Supreme Court held that it was constitutionally permissible for the state to impose the tax. It found that the taxable event occurred when the fuel was either stored in Illinois or loaded on the planes there. The danger of double taxation was minimized because the fuel could not be taxed by states through which it was transported. *Michigan-Wisconsin Pipeline Co v Calvert,* 347 US 157; 74 S Ct 396; 98 L Ed 583 (1954). Nor could it be taxed by the state in which it was merely consumed. *Helson v Kentucky,* 279 US 245; 49 S Ct 279; 73 L Ed 683 (1929). Finally, the Court held that it was fair to permit Illinois to

tax the plaintiff because Illinois was the state in which the preloading facilities were maintained and was likely to provide substantial services to those facilities.

Thus, under current decisional law, where the activity taxed has a substantial nexus or relationship to the taxing state and is fairly related to the services provided by the state, the tax is not an impermissible burden on interstate or foreign commerce, even though it increases the cost of doing business. *Colonial Pipeline Co v Traigle,* 421 US 100; 95 S Ct 1538; 44 L Ed 2d 1 (1975), *Brady, supra.*

The relevant inquiry, therefore, in the case before us, is what is the activity taxed and whether that activity has a substantial nexus with the taxing state and is fairly related to the services provided by the state. In *People v Bob-Lo Excursion Co,* 317 Mich 686, 691; 27 NW2d 139 (1947), *aff'd* 333 US 28; 68 S Ct 358; 92 L Ed 455 (1948), our Supreme Court held that the plaintiff's activity was engaging in foreign commerce. On appeal, the United States Supreme Court affirmed the holding that Bob-Lo's activities constituted engaging in foreign commerce. The Court then went on to find that the activities had a special nexus and close relationship to Detroit and Michigan.

"But if any segment of foreign commerce can be said to have a special local interest, apart from the necessity of safeguarding the federal interest in such matters as immigration, customs and navigation, the transportation of appellant's patrons falls in that characterization. It would be hard to find a substantial business touching foreign soil of more highly local concern. Except for the small fenced-off portion reserved for the lighthouse and three cottage sites, the island is economically and socially, though not politically, an amusement adjunct of the city of Detroit. Not only customs and immigrations

regulations of both countries, but physical barriers prevent intercourse, both commercial and social, between Canadians and appellant's patrons, except as the former may come first by other means to Detroit, then go to the island from American soil on appellant's vessel, and return from the holiday by the same roundabout route.

"The record indicates there are no established means of access from the Canadian shore to the island. There is no evidence of even surreptitious entry from the Canadian mainland. Appellant's vessels not only are the sole means of transportation to and from the island, but carry only its own patrons of Bois Blanc's recreational facilities. These travel exclusively on roundtrip tickets for passage beginning and ending on American soil. They are principally residents of Detroit and vicinity. All go aboard there and return the same day. None go from the island to the Canadian bank of the river. The only business conducted at the island is the operation of appellant's recreational and accessory facilities, which apparently do not include provision for overnight guests. No other persons than appellant's patrons come to the island, or have a right to come, from Canada's mainland or elsewhere, or go from the island to Detroit." 333 US 28, 35-36.

Despite the fact that at the time of this suit Bob-Lo operations are carried on by different owners, it does not appear from the stipulated statement of facts that the nature of the activity conducted has undergone significant change since the United States Supreme Court decision in *Bob-Lo Excursion Co.* Therefore, it does appear that Michigan has the power to tax the goods and materials stored or loaded onto plaintiff's vessels within Michigan. *United Airlines, supra, Brady, supra.*

3. *Is Bob-Lo exempt from the use tax because it is engaged in interstate commerce as well as foreign commerce?*

Citing the case *The Daniel Ball,* 77 US (10 Wall)

557; 19 L Ed 999 (1871), plaintiff contends that it was engaged in interstate commerce. *The Daniel Ball* held that a 123-ton steamer transporting goods and passengers between Grand Rapids and Grand Haven on the Grand River wholly within Michigan was engaged in interstate commerce. Plaintiff argues that, based on the same considerations, Bob-Lo vessels which traverse the Detroit River going from Detroit to Wyandotte are also engaged in interstate commerce and as such are exempt under exemption (k) and Rule 81.

We reject the argument on two grounds. First, as noted earlier, the United States Supreme Court and the Michigan Supreme Court have held that plaintiff's activity is foreign commerce. Second, and more pertinently, the limitation in exemption (k) was intended to include vessels plying Michigan waterways which were engaged exclusively in interstate commerce. It was not intended to include vessels, like *The Daniel Ball,* whose operations were intrastate.

Convincing proof that the limitation in exemption (k) would not apply in situations where a ship traveled from Detroit to Wyandotte is found in Rule 81. That rule was promulgated to explain exemption (k), MCL 205.94(k); MSA 7.555(4)(k). Its relevant language, emphasized below, would not qualify a vessel for exemption unless it traveled from Michigan *to another state.*

"Also nontaxable are sales of bunker and galley fuel, provisions, supplies, maintenance, and repairs for the exclusive use of those vessels of 500 tons or more, if those vessels *travel from a point in Michigan to a destination in another state.* Sales of such items for use of vessels operating in foreign commerce are taxable." 1979 AC, R 205.131(1).

Clearly, plaintiff was not engaged in interstate commerce within the intent and meaning of exemption (k).

4. *Does the classification between foreign commerce and interstate commerce contained in exemption (k) constitute a denial of the equal protection of laws?*

Plaintiff contends that by including vessels engaged in interstate commerce within the statutory exemption but failing to include those engaged in foreign commerce the Department of Treasury has denied the plaintiff equal protection of the laws. Since we have already held that under the authorities cited earlier Michigan may impose a use tax on Bob-Lo's operations in foreign commerce, it is unnecessary for us to decide whether the state's failure similarly to exempt vessels in interstate commerce is constitutionally impermissible.

Assuming, *arguendo,* that the failure to exempt equally vessels traversing navigable waters from Michigan to another state is violative of equal protection of the laws, the remedy is not to exempt vessels in foreign commerce but is to strike down the exemption for vessels in interstate commerce. That is not what plaintiff is asking here.

Affirmed. No costs, a question of public interest being involved.