CONSOLIDATION COAL COMPANY v DEPARTMENT OF
TREASURY

Docket No. 75420. Submitted July 17, 1984, at Lansing.—Decided
   February 20, 1985.

   The Department of Treasury issued a notice of intent to assess
      sales taxes against Consolidation Coal Company in the amount
      of $152,175.75 for the sale of bunker fuel to 11 customers
      operating vessels of registered tonnage of 500 tons or more, all
      of which sailed under Canadian registry and were engaged
      exclusively in foreign commerce. Consolidation, under protest,
      paid $120,207.37 in taxes and $19,948.04 in interest and
      claimed a refund. The refund was denied. Consolidation then
      filed suit for refund of sales taxes against the Department of
      Treasury in the Court of Claims challenging the constitutional-
      ity of the Treasury Department's interpretation of the section
      of the General Sales Tax Act which provides an exclusion for
      sales of bunker fuel to commercial vessels of 500 tons or more
      engaged in interstate commerce. The Treasury Department
      rule grants the exclusion only to vessels traveling from a point
      in Michigan to a destination in another state and taxes sales of
      bunker fuel for the use of vessels operating in foreign com-
      merce. Consolidation argued, *inter alia,* that, up until a 1976
      amendment to the rule, sales of fuel to vessels engaged in
      foreign commerce were excluded from taxation and that there
      has been no statutory change providing a basis for such change
      in interpretation and that interstate commerce should be con-
      sidered to include foreign commerce, thereby allowing an exclu-
      sion from sales tax for the sales of bunker fuel in this case. The
      Court of Claims, Michael G. Harrison, J., granted summary
      judgment in favor of the Department of Treasury. Consolida-
      tion appealed. *Held:*

      1. Consolidation's arguments that interstate and foreign com-

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Sales and Use Tax §§ 20 *et seq.,* 114.
[2, 3] 71 Am Jur 2d, State and Local Taxation §§ 244-253.
[4] 68 Am Jur 2d, Sales and Use Taxes §§ 27-32, 37, 38, 114.
[5] 5 Am Jur 2d, Appeal and Error §§ 873, 874.
[6] 68 Am Jur 2d, Sales and Use Taxes §§ 38, 114.

merce should be considered to be synonymous are without merit.

2. The Department of Treasury did not exceed its authority by reversing a long-standing interpretation of the applicable section of the General Sales Tax Act. The former interpretation did not comport with the clear language of the statute.

3. The department's interpretation of the statute does not violate the commerce clause of the United States Constitution. Foreign commerce is not discriminated against by taxing Consolidation for sales of fuel to vessels engaged solely in foreign commerce.

4. Consolidation's claim that the department's interpretation of the statute violates equal protection for the reason that it discriminates against foreign commerce will not be addressed since it is not essential to the disposition of the case.

5. The sale of bunker fuel for consumption by a vessel during its voyage does not constitute an export so as to come within the prohibition against states taxing exports.

6. The Treasury Department's interpretaion of the statute does not interfere with federal regulations so as to prevent the United States government from "speaking with one voice" when regulating commerce of foreign governments.

7. The imposition of the tax on Consolidation does not violate the Treaty of 1909 between the United States and the United Kingdom.

Affirmed.

1. TAXATION — SALES TAX — FOREIGN COMMERCE — BUNKER FUEL.

The fact that the Treasury Department for years interpreted a sales tax statute as exempting from taxation the sale of bunker fuel to vessels engaged in foreign commerce does not prevent the department from reversing that policy and taxing such sales where such action comports with the clear language of the statute (MCL 205.54a[e]; MSA 7.525[e]; 1979 AC, R 205.131).

2. TAXATION — FOREIGN COMMERCE — STATE TAXATION.

Foreign commerce is not constitutionally immune from state taxation; rather, it must bear its fair share of the state tax burden.

3. TAXATION — FOREIGN COMMERCE — STATE TAXATION.

No impermissible burden on foreign commerce will be found in the imposition of a state tax if the tax is applied to an activity with a substantial nexus to the taxing state, is fairly apportioned, does not discriminate against foreign commerce, is fairly related to the services provided by the state, does not

create a substantial risk of international multiple taxation, and does not prevent the federal government from speaking with one voice when regulating commercial relations with foreign governments.

4. TAXATION — FOREIGN COMMERCE — SALES TAX — BUNKER FUEL.

An increase in the cost of doing business by virtue of imposition of a state sales tax on bunker fuel used by vessels engaged solely in foreign commerce does not constitute discrimination where the tax is not imposed on vessels engaged in interstate commerce; the tax is imposed upon the seller of the fuel, not the vessel engaged in foreign commerce, and the fuel is not subject to multiple taxation through various taxing authorities; thus the foreign commerce itself is not discriminated against.

5. CONSTITUTIONAL LAW — APPEAL.

Resolution of a question by the Court of Appeals on constitutional grounds should be avoided if not essential to the disposition of a case on appeal.

6. TAXATION — VESSELS — BUNKER FUEL — SALES TAX.

The sale of bunker fuel for consumption by a vessel during its voyage does not constitute an export so as to come within the prohibition against states taxing exports.

*Foster, Swift, Collins & Coey, P.C.* (by *Patrick R. Van Tiflin* and *James B. Jensen, Jr.*), for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Curtis G. Beck,* Assistants Attorney General, for defendant.

Before: DANHOF, C.J., and D. E. HOLBROOK, JR., and C. W. SIMON,* JJ.

PER CURIAM. On August 27, 1981, Consolidation Coal Company filed a "petition for refund of sales tax" in the Court of Claims. Plaintiff challenged the constitutionality of § 4a(e) of the General Sales Tax Act, MCL 205.54a(e); MSA 7.525(e), as inter-

* Circuit judge, sitting on the Court of Appeals by assignment.

preted by Department of Treasury Rule 81 (1979 AC, R 205.131). Plaintiff moved for summary judgment, pursuant to GCR 1963, 117.2(2) and (3). The Department of Treasury answered and countered with its own motion for summary judgment, pursuant to paragraph (3). On November 23, 1983, plaintiff's motion was denied and defendant's was granted. Plaintiff appeals as of right. We affirm.

Plaintiff is a Delaware corporation, with its principal offices located in Pittsburgh, Pennsylvania; it also does business in Michigan. Plaintiff owns and operates a bunker fuel sales facility known as Lime Island Dock, located on Lime Island in Lake Huron close to the Canadian border. On February 11, 1980, defendant issued to plaintiff a "notice of intent to assess" in the amount of $152,175.75. This notice followed an audit for the taxable period October 1, 1975, through June 30, 1979. The audit revealed that plaintiff had not remitted sales taxes for the sale of bunker fuel to 11 customers operating vessels of registered tonnage of 500 tons or more, all of which sailed under Canadian registry and were engaged exclusively in foreign commerce. Sale of bunker fuel for the use of vessels operating in foreign commerce is taxable according to Department of Treasury Rule 81.

On February 28, 1980, plaintiff paid tax (under protest) in the amount of $120,207.37 and, later, accrued interest in the amount of $19,948.04. Plaintiff then claimed a refund.

On December 4, 1980, an informal conference was held before a hearing referee, who, on April 2, 1981, recommended in a written opinion that plaintiff's claim for a refund be denied. The referee's recommendation was accepted by Revenue Commissioner Sidney D. Goodman, who denied plaintiff's claim for refund on June 16, 1981. Plain-

tiff then filed the instant action in the Court of Claims.

Plaintiff first argues that the department has reversed long-standing policy in presently denying an exclusion for vessels traveling in foreign commerce, but that applicable statutory provisions have never been amended to provide a basis for such change in interpretation. Moreover, plaintiff posits that most authorities have considered interstate and foreign commerce synonymously, so that the term "interstate commerce" includes both interstate and foreign commerce, thereby allowing an exclusion from sales tax in the instant case. We find this contention to be without merit. MCL 205.54a; MSA 7.525 provides in relevant part:

"A person subject to tax under this act need not include in the amount of the gross proceeds used for the computation of the tax, sales of tangible personal property:

\* \* \*

"(e) To persons, of a vessel designated for commercial use of registered tonnage of 500 tons or more when produced upon special order of the purchaser, and bunker and galley fuel, provisions, supplies, maintenance, and repairs for the exclusive use of the vessel *engaged in interstate commerce."* (Emphasis added.)

In 1944, the Department of Treasury promulgated Rule 81 (1944 AC, R 205.131), which provided in part:

"Sales of vessels designed for commercial use of registered tonnage of 1,000 tons or more when produced upon special order of the purchaser are exempt. Likewise not taxable are sales of bunker and galley fuel, provisions, supplies, maintenance and repairs for the exclusive use of vessels of 1,000 tons or more, *which travel from a point in Michigan to a destination in another state or country.*

\* \* \*

"Sales of tangible personal property not for resale to vessels of registered tonnage of 1,000 tons or more *primarily engaged in intrastate commerce* are taxable as are all sales of vessels and to vessels of less than 1,000 tons." (Emphasis added.)

This interpretation of what is now § 4a(e), distinguishing between intrastate commerce and foreign and interstate commerce, was followed by the department for 27 years. In 1977, the rule was amended to make taxable the sales for the use by vessels operating in foreign commerce. Following an amendment in 1976, the rule now reads in relevant part:

"(1) Sales of vessels designed for commercial use of registered tonnage of 500 tons or more, when produced upon special order of the purchaser, are exempt from tax. Also nontaxable are sales of bunker and galley fuel, provisions, supplies, maintenance, and repairs for the exclusive use of those vessels of 500 tons or more, if those vessels *travel from a point in Michigan to a destination in another state. Sales of such items for the use of vessels operating in foreign commerce are taxable.*" (Emphasis added.) 1979 AC, R 205.131.

US Const, art 1, § 8, clause 3, provides: "The Congress shall have Power * * * To regulate Commerce with foreign Nations, and among the several States * * *." Not only does the commerce clause expressly identify foreign as well as interstate commerce, but the Supreme Court has noted that the foreign commerce power was the greater of the two, dating back to the founders. *Japan Line, Ltd v Los Angeles County,* 441 US 434, 448-449; 99 S Ct 1813; 60 L Ed 2d 336 (1979). As noted by the lower court:

" 'Interstate commerce' is defined by Black's Law

Dictionary, 5th Ed, as 'Traffic, intercourse, commercial trading, or the transportation of persons or property between or among the several states of the Union, or from or between points in one state and points in another state * * *.' 'Foreign commerce' is defined in Black's as 'Trade between persons in the United States and those in a foreign country.' Other definitions are similar.

"Nevertheless, Consolidation maintains the distinction between the terms was not clear when the Act was originally enacted. Such is not borne out by case law. See *Levin v Fisher,* 217 Mich 681, 684; 187 NW 328 (1922), *[Lord] v [Goodall, Nelson & Perkins] Steamship Co,* 102 US 541; 26 L Ed 224 [(1881)], *Atlantic Cleaners & [Dyers, Inc] v United States,* 286 US 427; 52 S Ct 607; 76 L Ed 1204 [(1932)].

"Moreover, the Legislature, since the rule revision, has amended other parts of the Act and has not exempted foreign commerce. Under such circumstances, the Court concludes that the Legislature intended not to provide an exemption to those engaged in foreign commerce."

We find the above an accurate assessment of the language contained in § 4a(e).

Additionally, while plaintiff persuasively argues that the Legislature amended the act on several occasions when Rule 81 excluded foreign commerce without changing such exclusion, and that this indicates a legislative intent to so exclude such commerce, the fact that the effect of the present Rule 81 has never been amended in the numerous amendments *since* the department began imposing tax upon foreign commerce negates the inference that the Legislature intended to exclude foreign commerce. This being the case, we look to the clear language of the statute, which does not exclude foreign commerce.

Plaintiff further contends that the Department of Treasury exceeded its authority by reversing a

long-standing interpretation of an ambiguous statutory provision, where the Legislature had not acted in any way to clarify its intent. The cases cited by plaintiff, however, do not support this proposition in the present case. Rather, plaintiff's authority states that dubious statutory language may not be resolved against the taxpayer. See *e.g., Garavaglia v Dep't of Revenue,* 338 Mich 467, 470-471; 61 NW2d 612 (1953). Where, as here, the language under consideration is not ambiguous, it should be applied as written, not construed in favor of the taxpayer.

Accordingly, the term "interstate commerce" in § 4a(e) is not ambiguous and does not exempt foreign commerce from the sales tax. Therefore, the present Rule 81 correctly states the intent of the Legislature insofar as it imposes the sales tax upon sales of fuel to vessels in foreign commerce. If the department formerly interpreted § 4a(e) to exclude such foreign commerce, that interpretation did not comport with the clear language of the statute.

Plaintiff next asserts that exempting interstate commerce while taxing foreign commerce is patently discriminatory and precludes the federal government from speaking with one voice when regulating commerce with foreign governments. Plaintiff concludes that this violates both article 1, § 8(3), the commerce clause, and equal protection, since there is no rational basis for not treating interstate and foreign commerce similarly in this case. Finally, plaintiff argues that the present scheme is tantamount to regulation of foreign commerce, an area preempted by federal law, and that the sales tax is in violation of the Treaty of 1909 between the United States and the United Kingdom, adopting a uniform policy regarding the

boundary waters lying between the United States and Canada.

Foreign commerce is not constitutionally immune from state taxation, but, rather, must bear its fair share of the state tax burden. See discussion in *Bob-Lo Co v Dep't of Treasury,* 112 Mich App 231, 238-243; 315 NW2d 902 (1982). No impermissible burden on foreign commerce will be found if the state tax is applied to an activity with a substantial nexus to the taxing state, is fairly apportioned, does not discriminate against foreign commerce, is fairly related to the services provided by the state, does not create a substantial risk of international multiple taxation, and does not prevent the federal government from " 'speaking with one voice when regulating commercial relations with foreign governments' ". *Japan Line, Ltd, supra,* 441 US 444-451, quoting *Michelin Tire Corp v Wages,* 423 US 276, 285; 46 L Ed 2d 495; 96 S Ct 535 (1976).

The lower court correctly concluded that the instant case required consideration of the above factors. Plaintiff, however, does not challenge § 4a(e) on any of the enumerated criteria in *Japan Line, Ltd, supra,* save for the claim that it discriminates against foreign commerce vis-à-vis interstate commerce. Plaintiff admits that a nondiscriminatory sales tax could be imposed.

Defendant, on the other hand, claims that the federal commerce power is not implicated by a sales tax on bunker fuel to be consumed in transit, since the tax incident is purely intrastate in nature. We disagree with this contention. Nevertheless, plaintiff has not established that the present scheme discriminates against foreign commerce. In its brief plaintiff states that "the tax clearly increases the operating cost of vessels engaged in foreign commerce compared to those engaged in

interstate commerce and to that extent is patently discriminatory and also precludes the United States from speaking with one voice when regulating commerce of foreign governments". Plaintiff additionallly argues that this Court's decision in *Bob-Lo, supra,* "incredibly" relied upon the discredited doctrine of *Spector Motor Service, Inc v O'Connor,* 340 US 602; 71 S Ct 508; 95 L Ed 573 (1951). Plaintiff is correct that *Spector* has been discredited. Plaintiff, however, incorrectly argues that an increase in the cost of doing business constitutes discrimination. In *Complete Auto Transit, Inc v Brady,* 430 US 274; 97 S Ct 1076; 51 L Ed 2d 326 (1977), the case which specifically disavowed the *Spector* rule, the Supreme Court noted other cases which found no impermissible burden, *i.e.,* no discrimination, even though the costs of doing business were increased. In addition, the decision in *Bob-Lo* did not rely upon *Spector.* Plaintiff's claim does not establish discrimination.

Furthermore, we find *Japan Line, Ltd, supra,* clearly distinguishable. The *Complete Auto* test, as adopted and expanded in *Japan Line* to encompass foreign commerce, is a pragmatic approach which looks to economic realities. Of key significance in *Japan Line, Ltd* and cases cited therein was the fact that the taxed item passed into many jurisdictions, including foreign nations, and was potentially subject to tax in each jurisdiction. Thus, numerous sovereigns were involved, and imposition of the tax encouraged retaliatory actions in contravention of federal policy. Here, the tax is imposed upon plaintiff, which is not a purchaser, and thus, not in the same position as a participant in foreign commerce whose items pass through various taxing authorities, many or all of which attempt to impose a tax on the item. In other words, it is the privilege of making the transaction

here which is taxed, not the transport of the fuel in the stream of foreign commerce, or its use in any way by the purchaser. The tax is not upon the *vessels* which engage solely in foreign commerce. Rather, it is plaintiff which is the taxpayer, see *Sims v Firestone Tire & Rubber Co,* 397 Mich 469; 245 NW2d 13 (1976), and the tax is not duplicated. Accordingly, while plaintiff does engage in foreign commerce, the foreign commerce itself, unlike the situation in *Japan Line, Ltd, supra,* is not discriminated against. In this connection, plaintiff's sale of fuel is not an integral part of this commerce, so that plaintiff's claim of discrimination is not persuasive. See *Detroit & Cleveland Navigation Co v Dep't of Revenue,* 342 Mich 234, 243; 69 NW2d 832 (1955).

As to plaintiff's equal protection claim, we decline to address the contention that § 4a(e) of the act is unconstitutional for the reason that it discriminates against foreign commerce. Where resolution of a question on constitutional grounds is not essential, such should be avoided. See *e.g., People v Gauntlett,* 134 Mich App 737, 746-747; 352 NW2d 310 (1984), and *Lisee v Secretary of State,* 388 Mich 32, 40-41; 199 NW2d 188 (1972).

In *Bob-Lo, supra,* a similar situation was presented to a panel of this Court, which held that the bunker fuel taken on board the Bob-Lo boats was subject to use tax pursuant to the very same Rule 81 under construction in the instant case. *Bob-Lo* considered discrimination, not as a factor under commerce clause analysis, but, rather, as a separate issue of equal protection. There, it was stated:

"Plaintiff contends that by including vessels engaged in interstate commerce within the statutory exemption but failing to include those engaged in foreign com-

merce the Department of Treasury has denied the plaintiff equal protection of the laws. Since we have already held that under the authorities cited earlier Michigan may impose a use tax on Bob-Lo's operations in foreign commerce, it is unnecessary for us to decide whether the state's failure similarly to exempt vessels in interstate commerce is constitutionally impermissible.

"Assuming, *arguendo,* that the failure to exempt equally vessels traversing navigable waters from Michigan to another state is violative of equal protection of the laws, the remedy is not to exempt vessels in foreign commerce but is to strike down the exemption for vessels in interstate commerce. That is not what plaintiff is asking here." 112 Mich App 245.

In the case *sub judice,* the same outcome as in *Bob-Lo* is in order as far as the remedy is concerned. Plaintiff's assertion that this Court can read "and foreign commerce" into the term "interstate commerce" in § 4a(e) is, as noted, premised on the false assumption that the term is ambiguous. By including foreign commerce in the § 4a(e) exemption, this Court would be adding to the statute, not interpreting it. Moreover, plaintiff has not requested that this Court strike the exemption granted to interstate commerce, but demands that foreign commerce also be exempted. This we will not do.

Plaintiff's remaining objections to the exclusion of foreign commerce from § 4a(e) exemptions are not addressed here. Plaintiff's discussion in its brief of its equal protection and due process challenges raises no new issues over what was considered above. Furthermore, plaintiff presents no support for the alleged violation of Const 1963, art 9, § 3, and the sale of bunker fuel for consumption by a vessel during its voyage does not constitute an export so as to come within the prohibition against states taxing exports. See *Shell Oil Co v State*

*Board of Equalization of California,* 64 Cal 2d 713; 51 Cal Rptr 524; 414 P2d 820 (1966), *app dis* 386 US 211; 87 S Ct 973; 17 L Ed 2d 870 (1967).

We also find no interference with federal regulations which prevents the United States government from "speaking with one voice". Such improper regulation is only found where the tax is linked to specific regulatory directives which would impede congressional objectives. No such connection exists here. See *MCI Telecommunications Corp v Dep't of Treasury,* 136 Mich App 28, 36; 355 NW2d 627 (1984).

Plaintiff's final argument, that the taxation of the bunker fuel sold to the Canadian vessels is in violation of the Treaty of 1909 between the United States and the United Kingdom, is a point "not set forth or necessarily suggested by the Statement of Questions Involved" and does not merit consideration. GCR 1963, 813.1. In any event, the treaty addresses "free navigation" of all navigable boundary waters and is not affected by a tax imposed upon the *seller of fuel.* Again, the sales tax is not imposed upon the vessels. The tax is merely *permitted* to be passed on to consumers pursuant to MCL 205.73; MSA 7.544 as a cost of doing business. A tax is not discriminatory merely because it increases such costs, nor does it violate the Treaty of 1909.

Affirmed.